**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Betty Jean ANDERSON, Defendant-Appellant.**

No. 74–1021.

United States Court of Appeals, Sixth Circuit.

Argued June 10, 1974.

Decided Sept. 24, 1974.

McCree, Circuit Judge, dissented and filed an opinion.

Don L. Hanni, Youngstown, Ohio, for defendant-appellant.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before EDWARDS, McCREE and ENGEL, Circuit Judges.

PER CURIAM.

Appellant in this case waived a jury and was tried before a District Judge in the United States District Court for the Northern District of Ohio, Eastern Division for attempted manslaughter, in violation of 49 U.S.C. § 1472(k)(1) (1970), and 18 U.S.C. § 1113 (1970). She was found guilty and sentenced to two years under 18 U.S.C. § 4208(a)(2) (1970).

The events which produced this sad and macabre story may be recited briefly, since the only appellate issue of significance pertains to federal jurisdiction.

Appellant boarded a United Airlines plane scheduled between Pittsburgh, Pennsylvania and Youngstown, Ohio. Some time during the flight (she testified 15 minutes after it left Pittsburgh) she went to the lavatory of the aircraft where she remained until approximately 15 minutes after the plane had landed in Youngstown. After appellant and the flight crew had left the airplane, a ground crew in charge of cleaning the plane noticed a baby in the bottom of the toilet and called for help to cut a hole in the side of the toilet refuse box. The baby was full term and lived.

Federal jurisdiction is defined by 49 U.S.C. § 1301(32)(1970), which defines the special aircraft jurisdiction of the United States to include:

"(a) civil aircraft of the United States; * * * For the purpose of this definition, an aircraft is considered to be in flight from the moment when power is applied for the purpose

of takeoff until the moment when the landing run ends."

Defendant's testimony at trial indicated that the baby was dropped in the toilet receptacle, which had at least two inches of liquid in it, contemporaneously with its birth.

At trial the parties had stipulated:

"No. 3. It is stipulated by and between the Government of the United States and the defendant, Betty Jean Anderson, that Betty Jean Anderson gave birth to a child during the flight of Aircraft No. 699 between Pittsburgh, Pennsylvania and Youngstown, Ohio, on February 19th, 1973."

Appellant contends on this appeal that this is a stipulation to federal jurisdiction and that since such jurisdiction did not in fact exist, it could be contested on appeal.

The government argues that the stipulation is a stipulation of fact which has bearing on jurisdiction and is binding on appellant.

■ Appellant was represented by counsel at her trial. Her counsel in her presence entered into the stipulation which we have quoted above. The stipulation is not a stipulation to federal jurisdiction which is a purely legal question. On the contrary, it is a stipulation to a fact which serves to establish federal jurisdiction.

We find no ambiguity in the language of the stipulation. The normal meaning of the words "during the flight" would be the period while the aircraft was in the air. This period is clearly encompassed by the statutory period from power application to the end of the landing run.

■ Voluntary stipulations of undisputed facts are appropriate methods of shortening trials and are to be encouraged. United States v. 133.79 Acres, More or Less, in Sebastian County, Arkansas, 313 F.Supp. 697, 702 (W.D.Ark. 1970); Minneapolis Brewing Co. v. Merritt, 143 F.Supp. 146, 149 (D.N.Dak. 1956). There is not a line in this transcript to show that this stipulation was

other than voluntary or that appellant's counsel was ignorant of the federal jurisdictional standard when he entered into it. It may well be that appellant and her counsel, before trial and sentence, preferred that the trial take place in a federal rather than a state forum.

As the United States Supreme Court held in an early case:

"Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission." Railway Co. v. Ramsey, 89 U.S. (22 Wall.) 322, 327, 22 L.Ed. 823 (1874).

*See also* United States v. Campbell, 453 F.2d 447, 451 (10th Cir. 1971).

■■ The District Court had jurisdiction in this case. Appellant was indicted for willfully attempting murder or manslaughter. At trial the government sought to prove only involuntary manslaughter—an included offense under 18 U.S.C. § 1113 (1970). (See 18 U.S.C. § 1112 (1970)). The facts established at trial were such as to support the trial judge's verdict of guilty of attempted manslaughter.

The judgment of the District Court is affirmed.

McCREE, Circuit Judge (dissenting):

I respectfully dissent. I agree with the opinion of the court that parties may stipulate to the existence of facts that may confer federal jurisdiction. But the principle that commands strict construction of jurisdictional statutes also requires careful scrutiny of stipulations of jurisdictional facts. *See, e. g.,* McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L. Ed. 1135 (1936). I would hold that the stipulation does not establish jurisdiction under 49 U.S.C. § 1301(32).

The stipulation was entered as one of several stipulations of fact, and the circumstances surrounding its adoption do not indicate that it was entered into for the purpose of conferring special air-

craft jurisdiction on the district court. Instead, the parties stipulated only that appellant "gave birth" to a child "during the flight" from Pittsburgh to Youngstown. This stipulation is insufficient to confer the special jurisdiction for two reasons. First, although the court states that the phrase "during the flight" is unambiguous and that "its normal meaning would be the period while the aircraft was in the air," I observe that the word flight is also defined as "a trip made by or in an airplane" or "an airplane making a scheduled flight." Webster's New Collegiate Dictionary. Either of these definitions comprehends a longer span of time than that specified in the special aircraft jurisdictional statute. Second, the stipulation does not state that appellant committed the offense of which she was convicted within the special aircraft jurisdiction. She stipulated only that she "gave birth" to a child "during the flight," an act that is not criminal. She did not agree that delivery took place before the end of the landing run or, even if the child was born aloft, that, with the requisite criminal intent, she abandoned it within the special aircraft jurisdiction.

The deficiency of the stipulation was not remedied by the evidence adduced at trial. Appellant was not asked if birth occurred while the aircraft was in the air, and she testified, without contradiction, that she was not even aware that she had delivered a baby. Other evidence shows only that the aircraft departed from Pittsburgh at 8:35 p. m.; that approximately fifteen minutes later at 8:50 p. m. she walked into the lavatory; that the aircraft arrived at Youngstown at 9:02 p. m.; and that she left the lavatory and deplaned approximately fifteen minutes later at 9:17 p. m. These facts do not establish that the offense of unlawfully and wilfully attempting to commit involuntary manslaughter occurred within the special aircraft jurisdiction of the United States. Accordingly, I would hold that the district court's jurisdiction was not established, and that appellant's conviction should be reversed.