420 F.Supp. 1246 (1976)
SEVEN-UP BOTTLING COMPANY, a Missouri Corporation, Plaintiff,
v.
The SEVEN-UP COMPANY, a Missouri Corporation, and Seven-Up Services, Inc., a Missouri Corporation, Defendants.
No. 75-973C (A).
United States District Court, E. D. Missouri, E. D.
September 20, 1976.
*1247 Thompson & Mitchell, St. Louis, Mo., for plaintiff.
Bryan, Cave, McPheeters & McRoberts, Veryl Riddle, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court on the motion of defendants, The Seven-Up Company and Seven-Up Services, Inc., to dismiss the complaint of plaintiff, Seven-Up Bottling Company, for lack of jurisdiction over the subject matter, Rule 12(b)(1) FRCP, and for failure to state a claim upon which relief can be granted, Rule 12(b)(6) FRCP.
Plaintiff, Seven-Up Bottling Company (hereinafter referred to as plaintiff or Bottling), brings this action seeking relief from alleged unfair competition of defendants and for consideration of various claims alleged to be cognizable under the Trademark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1051, et seq. Plaintiff bases jurisdiction of this Court on 28 U.S.C. § 1338.
For purposes of the motion to dismiss, all well pleaded allegations of fact will be taken as true.
The principal allegations in the complaint may be summarized as follows: Plaintiff, Bottling, is a Missouri corporation, which since 1929 has bottled a soft drink under the trademark "Seven-Up." Defendant, The Seven-Up Company (hereinafter referred to as defendant or Company), is a *1248 Missouri corporation, which since 1929 has been a seller of extracts used in the flavoring of soft drinks. Defendant, Seven-Up Services, Inc. (hereinafter referred to as Services), is the wholly-owned subsidiary of Company incorporated in Missouri in 1957, to aid distributors of the soft drink "Seven-Up" in production and marketing of that beverage.
During its corporate existence defendant Company has filed numerous applications to register the trademarks "Seven-Up" and "7-Up" with designs on various commodities, including soft drinks, syrups, extracts and flavors. In 1928 and 1935, Company filed applications to register the trademarks "Seven-Up" and "7-Up", respectively, for "NONALCOHOLIC, NONCEREAL, MALTLESS BEVERAGES SOLD AS SOFT DRINKS AND SYRUPS, EXTRACTS AND FLAVORS USED IN MAKING THE SAME" * * *. Plaintiff Bottling has alleged that Company did not produce soft drinks or syrups on the dates of the applications, thus rendering the registrations maturing from said applications invalid and void as based on materially false and fraudulent statements.
Since at least 1929, Company has sold a soft drink flavoring extract used in the manufacture of the soft drink "Seven-Up". Plaintiff in the past has purchased this flavoring extract from defendant, producing the drink "Seven-Up" and packaging it for sale to outlets for resale to consumers. In 1938, Company instituted a franchise policy supplanting the unwritten and relatively informal process by which their "Seven-Up" flavoring extract had been sold in the past. Until 1970, defendant Company induced manufacturers and packagers of soft drinks to accept franchises under which they would purchase extract for use in the production, packaging and selling of soft drink under the trademark "Seven-Up", though Company itself did not produce soft drink during that period. Those entering into these agreements were to develop their separate soft drink businesses in prescribed territories specifically reserved to them along with "the exclusive rights within said territories to prepare such soft drink according to the formula of Company in packages bearing the trademark `Seven-Up.'" Plaintiff Bottling entered into such a franchise agreement on January 24, 1939, receiving as its exclusive territory portions of Missouri and Illinois. An affiliate of Bottling entered into a similar agreement regarding a different territory on January 25, 1939, which territory subsequently joined with that of plaintiff in 1959. Plaintiff alleges that such agreements constituted perpetual agreements.
Prior to 1943, the various licensees of Company under the above-described agreements advertised their product individually within their respective exclusive territories. Both content and format were subject to approval by the Company. In 1943, a national "Seven-Up" media advertising program was organized by certain of Company's licensees ("Seven-Up" Developers), including plaintiff. Pursuant to this program the individual licensees contributed $17.50 per gallon of "Seven-Up" extract purchased from Company to a fund administered by Company as trustee. Although the Company itself made no monetary contributions to this fund, it did use those monies received to purchase national media advertising to develop the good will of the "Seven-Up" Developers and the Company. This fund terminated in 1950.
Once in 1942, and three times in 1943, Company filed applications to register the mark "Seven-Up" along with accompanying drawings as a "collective" mark for * * "carbonated, nonalcoholic, noncereal, maltless beverages, sold as soft drinks * * * showing the collective mark as actually used upon the goods by persons duly authorized by applicant * * *." On these applications the "collective" mark is stated to have been used since 1928 by persons authorized by Company, such use of the "collective" mark upon the goods intended to indicate that "extracts or other ingredients used in compounding the beverage came from a single source, the above named corporation [Company]." Plaintiff claims that these "collective" marks are valid, have become *1249 incontestable by passage of time and prevent defendant Company from using the trademark "Seven-Up" on soft drinks and syrups, this since the registration of the marks in question reflected the use of the marks by a collective group of authorized persons (Company's licensees) rather than Company itself.
In 1954, 1956, 1957 and 1959, Company obtained registrations showing "7-Up" or that symbol in a particular slogan. All of these registrations covered soft drinks. Plaintiff avers that at the time these registrations were issued neither defendant Company nor defendant Services, manufactured or sold soft drinks, and, therefore, such registrations were based on materially false and fraudulent statements much like the applications of 1928 and 1935. Plaintiff further alleges that these registrations are inconsistent with the so-called "collective" marks of the 1940's and represent an attempt by Company to compete unfairly with plaintiff.
The year 1956 saw Bottling and Company enter into a contract covering the manufacture, promotion and sale of a premix soft drink through vending machines and dispensing equipment under the trademark "Seven-Up". Bottling has expended over one million dollars on equipment necessary to this process, and as a result of its efforts owns a valuable good will in this business.
Since 1961, plaintiff Bottling has manufactured and sold soda fountain syrup in its exclusive territory under the trademark "Seven-Up". Bottling was offered early in 1961, a contract from Company which would have covered the promotion and sale of the syrup but reserved to Company the right to make and sell syrup in that territory under the trademark "Seven-Up" or designate others to do so. Bottling claims this attempted reservation of rights would permit Company to engage in unfair competition with Bottling and would represent as well an infringement of Bottling's beneficial rights under the "collective" trademark registrations of the 1940's. Accordingly, Bottling refused the offer, preferring instead to buy its syrup from Services until later in 1961 when a contract agreeable to both Bottling and Company was negotiated.
In 1966, Company obtained Registration Numbers 801,421 and 816,189 showing "7-Up" and "Seven-Up" for soft drinks. Plaintiff alleges that both said registrations should be cancelled as inconsistent with the "collective" marks obtained in the 1940's and in derogation of Bottling's rights under those marks. It is claimed by Bottling that cancellation of the registrations will also be warranted if it is found that Company was manufacturing and selling "Seven-Up" soft drink in cans as a violation of the law governing collective marks wherein the registrant is barred from manufacturing, packaging or selling the product on which the mark is used. It is further alleged that Registration Number 816,189 was falsely and fraudulently procured by the statement that Company had exclusive use of the mark since 1928, when such exclusive use did not exist.
There is presently pending before the United States Patent and Trademark Office, Application, Serial Number 45,076, to register "7-Up" and a design to be used in conjunction with soft drinks, syrups and extracts. In this application Company represents that it has the exclusive right to use such mark in commerce. Bottling alleges that this representation of exclusive right to use of the mark is materially false and fraudulent, that the application is inconsistent with the "collective" marks obtained by Company, and that the application represents yet another attempt on the part of Company to appropriate Bottling's good will, thus constituting unfair competition.
During 1958, defendants Company and Services began to procure the canning of the soft drink "Seven-Up". In 1959, Bottling commenced to purchase this canned "Seven-Up" from Services. This purchasing continued on an informal basis until January of 1968, at which time Bottling and Company executed a written agreement concerning Bottling's purchase of canned "Seven-Up" for resale. Under this agreement Bottling was allowed to purchase canned "Seven-Up" from those designated *1250 by Company as "approved packagers." Recently, however, Company has required Bottling to purchase canned "Seven-Up" from Services, which corporation generally charges higher prices than the "approved packagers." Bottling has sought the permission of Company to can "Seven-Up" within its designated territory, but in 1974, Company refused such request except upon the condition that Bottling: (1) agree that Company reserves itself the right to manufacture "Seven-Up" soft drink in Bottling's territory, (2) surrender its 1939 contract with Company, and (3) accept a new contract with a limited term of years. Company has further advised Bottling that similar conditions must be met before Bottling will be permitted to package "Seven-Up" in plastic containers.
Plaintiff alleges that Company, by virtue of the "collective" mark registrations and through its course of dealing with plaintiff and other "Seven-Up" licensees, occupies the position of a fiduciary with regard to these licensees. It is claimed that this position of trust has been betrayed by the self-dealing of Company and its efforts to appropriate plaintiff's good will. It is alleged the various actions by defendants with regard to soft drink under the trademark "Seven-Up" have violated plaintiff's exclusive rights in its territory, infringe upon plaintiff's rights under the collective marks and constitute unfair competition with plaintiff.
Plaintiff's prayer for relief requests that defendants be enjoined from; (1) making or selling syrup under the trademark "Seven-Up" in plaintiff's designated territory, (2) making or selling soft drink under the trademark "Seven-Up" for ultimate sale to consumers in plaintiff's designated territory or elsewhere, (3) competing in any way in plaintiff's territory with regard to soft drink under the trademark "Seven-Up", and (4) doing any other act jeopardizing plaintiff's business. It is further requested that Company be ordered to recognize plaintiff's right to can "Seven-Up" in its designated territory. Finally, plaintiff seeks cancellation of all trademark registrations procured by Company except those considered "collective", and the denial of that registration which is presently pending.
It is the defendants' position in their motion to dismiss that plaintiff has appended claims of unfair competition onto trademark claims, with federal jurisdiction based solely on 28 U.S.C. 1338. It is argued by defendants that the dismissal before trial of plaintiff's trademark claims would necessitate dismissal of plaintiff's claims of unfair competition as such state law claims would have nothing to which they could append.
Five basic grounds are presented by the defendants in their motion to dismiss plaintiff's trademark claims for failure to state a claim for relief. First, it is claimed that as a licensee of Company, Bottling is estopped to deny the validity of its licensor's trademarks. Second, defendants contend that the so-called "collective" marks are not collective marks as provided in the Lanham Act, but are instead "related company" marks whose benefits are received by defendant, and even if collective, such marks are not inconsistent with the other registrations. Third, it is argued that plaintiff has acquiesced in defendants' activities and that 45 plus years of notice of the marks provided by the public record bar plaintiff's action by the equitable doctrine of laches. Fourth, plaintiff's allegations of trademark fraud are said by defendants to be insufficiently made under Rule 9(b) FRCP. Fifth, judicial admissions made by plaintiff are argued to have rendered moot claims of fraud and inconsistency with regard to certain trademark registrations. Since we dispose of this matter on the first ground, we do not consider the others.
In Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), the Court said:
"For the purposes of a motion to dismiss the material allegations of the complaint are taken as admitted. (Omitting citation.) And, the complaint is to be liberally construed in favor of the plaintiff. See Fed.Rule Civ.Proc. 8(f); Conley v. Gibson, 355 U.S. 41 [78 S.Ct. 99, 2 *1251 L.Ed.2d 80] (1957). The complaint should not be dismissed unless it appears that appellant could `prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, supra, at 45-46 [78 S.Ct., at 102]."
See also: Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974); Barnes v. Dorsey, 480 F.2d 1057, 1060 (8th Cir. 1973). In Bramlet v. Wilson, supra, at 716, the Court said:
"Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."
Further, in Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 973 (8th Cir. 1968), cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969), the Court stated:
"In testing the legal sufficiency of the complaint the well-pleaded allegations are taken as admitted but conclusions of law and unreasonable inferences or unwarranted deductions of fact are not admitted."
The case before the Court is a case wherein dismissal is proper because the well-pleaded allegations of the complaint disclose the existence of a licensee-licensor relationship between plaintiff and defendant Company, which constitutes an insuperable bar to relief not avoided by conclusions of law and unwarranted deductions of fact.
In plaintiff Bottling's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (hereinafter cited as "Memo in Opposition"), at page 1, it is stated:
"At the very outset, plaintiff wishes to make it clear to the Court and to defendant that it:
"1. Does not claim title to, or ownership of the mark `Seven-Up' or `7-Up' for soft drinks and syrups for making the same.
"2. Does not question the validity of the mark, `Seven-Up' or `7-Up'.
"3. Does not question Defendant, The Seven-Up Company's ownership of the mark `Seven-Up' or `7-Up' as used on flavor extracts.
"4. Does not question Defendant, The Seven-Up Company's ownership of the collective trademark `Seven-Up' or `7-Up' as used on soft drinks and syrups for making the same.
"5. Does not question the validity of the license agreement between Plaintiff and Defendant."
Such statements during the pleading stage are judicial admissions binding on the party making them and eliminate the need for evidence on the subject matter of the admission. State Farm Mutual Automobile Insurance Co. v. Worthington, 405 F.2d 683, 686 (8th Cir. 1968). See also: Scott v. Commissioner of Internal Revenue, 117 F.2d 36, 40 (8th Cir. 1941); Hall v. United States, 314 F.Supp. 1135, 1137-1138 (N.D.Cal.1970).
The establishment of an existing licensor-licensee relationship between Company and Bottling effectively constitutes an insuperable bar to recovery by Bottling with regard to its trademark claims. Under the doctrine of licensee estoppel a plaintiff-licensee is estopped from contesting the validity of its licensor's marks. Heaton Distributing Co. v. Union Tank Car Co., 387 F.2d 477, 482 (8th Cir. 1967); III Callman, Unfair Competition, Trademarks and Monopolies, § 78.02, at 454 (3rd Ed. 1970). The licensee is estopped to contest the validity of the licensor's title during the course of the licensing agreement. Professional Golfer's Association v. Bankers Life & Casualty Co., 514 F.2d 665, 671 (5th Cir. 1975). However, upon expiration of the license the licensee is no longer estopped to deny the validity of its licensor's trademark. Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., 343 F.2d 655, 658 (7th Cir. 1965).
In the instant case, plaintiff by judicial admission has established the existence of a present and valid licensing agreement between plaintiff and defendant. Thus becomes operative that "long settled principle of law that a licensee of a trademark or tradename may not set up any adverse claim in it as against its licensor." Pacific Supply Cooperative v. Farmers Union *1252 Central Exchange, 318 F.2d 894, 908-9 (9th Cir. 1963), cert. denied, 375 U.S. 965, 84 S.Ct. 483, 11 L.Ed.2d 414 (1964). Plaintiff Bottling seeks cancellation of seven trademark registrations (those of 1929, 1936, 1954, 1956, 1957, 1959 and 1966) and the refusal of the trademark application of 1975 on the grounds that such are "invalid, void and of no effect" as having been fraudulently obtained or requested on the basis of materially false and fraudulent statements. The two trademark registrations of 1966 and the trademark application of 1975 are sought to be cancelled for alleged inconsistency with previously registered "collective" marks. Such alleged invalidity for false and fraudulent registration statements and inconsistency with other marks as well as the plaintiff's prayer for cancellation leave little doubt but that licensor-Company's title to the marks represented by those registrations is being attacked by its licensee. Accordingly, the licensee, Bottling, is estopped to deny the validity of those trademarks.
Plaintiff states in its pleadings that it does not claim to own the "Seven-Up" mark and that it does not claim that defendant Company is not the sole owner of that mark. Rather, it claims only "those rights" consistent with the 1939 agreement and those four registrations of 1943, 1944 and 1945 allegedly covering collective marks (Memo in Opposition, at 11-12). Whether those four marks of the 1940's are truly collective within the meaning of the Lanham Act has therefore greatly occupied the energies of the parties in their arguments to the Court. Plaintiff, in claiming the marks to be collective as per 15 U.S.C. §§ 1054, 1127, necessarily contends the organization or association owning the marks is denied the right to use them with rights under the trademarks accruing to the members of that association registering them. Pacific Supply Cooperative v. Farmers Union Central Exchange, Inc., supra, at 906; Huber Baking Co. v. Stroehman Brothers Co., 252 F.2d 945, 952 (2nd Cir. 1958), cert. denied, 358 U.S. 829, 79 S.Ct. 50, 3 L.Ed.2d 69 (1958).
It is defendants' primary contention that the marks are "related company" marks over which a right of quality control must be retained by the registrant of the mark. Such marks may be used by the registrant himself as with any "genuine" trademark. Turner v. HMH Publishing Co., 380 F.2d 224, 229 (5th Cir. 1967), cert. denied, 389 U.S. 1006, 88 S.Ct. 566, 19 L.Ed.2d 601 (1967); Keebler Weyl Baking Co. v. J. S. Ivin's Sons, Inc., 7 F.Supp. 211, 214 (E.D. Penn.1934); III, Callman, § 68.3, p. 89. If related company marks, plaintiff's claims of inconsistency would dissipate and only defendant would hold rights to the trademarks. However, it is the determination of the Court that an inquiry into the nature of the four trademarks in question is not necessary to the resolution of defendants' motion to dismiss, as the doctrine of licensee estoppel precludes plaintiff's assertion of rights under the marks even if such marks are deemed collective for purposes of this motion.
In Turner v. HMH Publishing Co., supra, at 228, it is stated that:
"Under the Lanham Act (15 U.S.C. § 1051 et seq.), registration of a trademark confers only procedural advantages and does not enlarge the registrant's rights, for ownership of a trademark rests on adoption and use, not on registration."
See also: American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 10 (5th Cir. 1974), for the proposition that the Lanham Act does not create substantive rights in a mark, but only supplies procedural advantages relating to the burden of proof. Therefore, Bottling's contention that it has exclusive rights to use of the mark "Seven-Up" cannot be founded solely upon registration of collective marks, but must rest either on ownership by use of the mark or on the grant of a license to use the mark by the owner of the mark. Plaintiff's admission in its Memo in Opposition, at page 1, set out supra, that it does not claim ownership of the marks "Seven-Up" or "7-Up" for soft drinks and syrups indicates that the right to use the mark is not based *1253 on ownership by use, but instead, by the grant of a license by defendant Company.
Plaintiff proposes that registration of the "collective" marks of 1943, 1944 and 1945 had and continues to have two distinct effects. First, it vests in plaintiff and to other "Seven-Up" developers similarly situated exclusive rights to the use of the trademark "Seven-Up" on soft drinks and syrups. Second, it vests in Company, as registrant of the marks, ownership of the marks. According to well-settled trademark law, such an argument constitutes an indirect attack on the validity of the Company's title to trademarks it obtained both before and after registration of the collective marks of the 1940's. By asserting Company is the owner of collective marks, Bottling attacks Company's right to use of the marks. Huber Baking Co. v. Stroehman Brothers Co., supra, at 952, states:
"A collective mark is owned, and may be registered, by the group or association of which it is a symbol, but not by a user thereof * * *."
See also: III, Callman, supra, at 85-86:
"The ownership of a collective mark is vested in one who does not make or sell goods or perform services."
In effect, Bottling's attempt to uphold the marks of 1943, 1944 and 1945 as collective marks challenges those trademarks of Company covered by registrations stating Company's use of the mark on various goods. It is an indirect attack by a licensee on its licensor's title to marks and it will be no more tolerated by the doctrine of licensee estoppel than a direct attack on those marks.
Plaintiff Bottling offers no effective arguments to rebut the presence and effect of licensee estoppel in the present case. Its assertion that licensee estoppel is the equivalent of "evidentiary estoppel" is not supported by the case cited to establish that proposition. Holly Hill Citrus Growers' Association v. Holly Hill Fruit Products, Inc., 75 F.2d 13 (5th Cir. 1935), does not involve the licensing of a trademark between two parties. It considers whether a corporation transferring its business, good will and certain trademarks to another corporation it has formed as a marketing tool is estopped to deny the transfer of valuable trademarks to that marketing corporation.
Plaintiff's attempts to distinguish those cases applying the doctrine of licensee estoppel from the case at bar concern not the validity or application of the doctrine, but only the manner in which the licensing agreement was created. Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., supra, involved recognition of the validity of a mark as part of a prior settlement of litigation. Heaton Distributing Co. v. Union Tank Car Co., supra, and Professional Golfers' Association v. Bankers Life & Casualty Co., supra, were cases in which the licensee had recognized the validity of the marks or licensor's ownership thereof either expressly in the license agreement or by paying royalties for the use of the mark. In Pacific Supply Cooperative v. Farmers Union Central Exchange, Inc., supra, the licensee had represented to the United States Patent Office that, at the time the registration was issued, the licensor owned the mark. Such distinctions by plaintiff do not affect the application of licensee estoppel where, as here, the existence and validity of the license agreement are established by judicial admission.
Having held that plaintiff's trademark claims are to be dismissed under Rule 12(b)(6) FRCP, for failure to state a claim upon which relief can be granted, it becomes necessary to determine whether plaintiff's claims of unfair competition must also fall. 28 U.S.C. 1338(b) provides:
"The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws."
The requirement that the federal trademark claim be both "substantial" and "related" to the state unfair competition claim presents a test determining federal jurisdiction similar to that of pendent jurisdiction as discussed in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 *1254 L.Ed.2d 218 (1966). In order for a state claim to be appended to a federal claim, Gibbs, supra, at 725, 86 S.Ct. at 1138, requires that:
"The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. (Omitting citation.) The state and federal claims must derive from a common nucleus of operative fact."
The requisites of the two tests parallel one another and the enactment of 1338(b) does not preclude the extension of the pendent jurisdiction doctrine to trademark cases. American Foresight of Philadelphia, Inc. v. Fine Arts Sterling Silver, 268 F.Supp. 656, 661-662 (E.D.Pa.1967).
In the case at bar, plaintiff has met its obligation to show that the state and trademark claims are "related". Such a related nature is shown by the "overlapping" of the factual basis of the two claims. Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 543 (2nd Cir. 1956). However, it is not shown, and the Court fails to see, how federal trademark claims can be "substantial" within the meaning of 1338 when they are dismissed before trial for failure to state a claim upon which relief can be granted. Gibbs, supra, at 726, 86 S.Ct. at 1139, intones:
"Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."
See also: Pacific Supply Cooperative v. Farmers Union Central Exchange,, supra; Morrow v. Schapiro, 334 F.Supp. 399, 403 (E.D.Mo.1971). In Pacific Supply Cooperative, supra, the Court said, p. 909:
"* * * the so-called issues of pendent unfair competition depend entirely upon the assertion of appellant Pacific that it has acquired an implied-in-fact exclusive license to use, in the Pacific northwest, the trademarks registered to National. The trial court having held, as a matter of law, that it has no such exclusive license, and we having held that this determination was correct, there is thus no support for the cause of action asserted under the label of pendent unfair competition."
In the instant case the Court is dismissing plaintiff's trademark claims for failure to state a cause of action, thus rendering those claims insubstantial for purposes of 1338(b) and the doctrine of pendent jurisdiction. Plaintiff's unfair competition claims cognizable under state law must of necessity also be dismissed for lack of jurisdiction since there is no diversity of citizenship.
Accordingly, the motion of defendants, The Seven-Up Company and Seven-Up Services, Inc., to dismiss the complaint is sustained for the above reasons.