Elizabeth L. FERGUSON,
Plaintiff-Appellee,

v.

NEIGHBORHOOD HOUSING SERVIC-
ES OF CLEVELAND, INC.,
Defendant-Appellant.

No. 84–3678.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 24, 1985.
Decided Jan. 3, 1986.

Jack Schulman (argued), Schulman and
Schulman, Cleveland, Ohio, Edward Wade,
Shaker Heights, Ohio, for defendant-appel-
lant.

Roger D. Heller, Theodore E. Meckler (argued), Cleveland, Ohio, for plaintiff-appellee.

Before ENGEL and KEITH, Circuit Judges, and JOINER, Senior District Judge.[*]

JOINER, Senior District Judge.

Defendant/appellant Neighborhood Housing Services of Cleveland, Inc. ("NHS") appeals from the judgment entered against it and in favor of plaintiff/appellee, Elizabeth Ferguson. The issue raised by NHS in this appeal concerns the trial court's subject matter jurisdiction over this case.

The litigation began on January 7, 1981, when Ferguson filed suit against her former employer, NHS. Ferguson alleged that NHS unlawfully paid her less money than it had paid her male predecessors for performing the same work. The alleged sex-based wage discrimination occurred from the beginning of 1979 through May of 1980, when Ferguson worked for NHS as an Assistant Director of Rehabilitation Services. The complaint invoked federal jurisdiction pursuant to the Equal Pay Act, 29 U.S.C. § 206(d)(1), which is part of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 *et seq.*, and pursuant to the court's power "to hear and decide all pendent state claims."

NHS is a nonprofit Ohio corporation located in Cleveland. It was established to combat housing deterioration in Cuyahoga County. NHS performs this service by helping Cleveland residents secure grants or loans to assist them in physically improving their residences. In addition to helping residents obtain money, NHS employees are available to examine the home, ascertain what work is appropriate or necessary, assist the resident in securing a contractor, and inspect the work to determine whether it has been performed correctly.

Paragraph 3 of Ferguson's complaint asserts that NHS is an employer within the meaning of § 3(d) of the FLSA, 29 U.S.C. § 203(d). NHS admitted ¶ 3 in its answer to Ferguson's complaint, and did not challenge its status as an FLSA employer until shortly before the trial was scheduled to begin. Ferguson had moved for leave to file an amended complaint, attaching a copy of the proposed amended complaint to her motion, on April 26, 1984. NHS then mailed to plaintiff's counsel a proposed second answer denying that the court had subject matter jurisdiction over the case because NHS was not an employer within the meaning of the FLSA. On the morning of trial, plaintiff moved to strike defendant's proposed second answer. Judge Battisti held an in-chambers conference with the parties before he began the trial. At the conference, Judge Battisti denied plaintiff's motion to amend the complaint, and also ruled that defendant could not file its second answer.

The jury trial of Ferguson's Equal Pay Act case thus did not address the issue of the status of NHS as an FLSA employer. The trial began on May 1, and on May 7, 1984, the jury returned a verdict in favor of Ferguson in the amount of $3,441.00. On June 11, 1984, Judge Battisti entered judgment for Ferguson in the amount of $6,882.00, which represents the jury verdict plus an equal amount in liquidated damages. 29 U.S.C. § 216(b). NHS now appeals.

### I. *Effect of Defendant's Admission that it is an FLSA Employer*

The primary issue presented by this appeal is the significance and effect of NHS' admission in its answer that it is an employer within the meaning of the FLSA. Ferguson argues that NHS voluntarily made a binding judicial admission. She concludes that this admission precludes NHS from asserting that it is not such an employer, the facts from which, among others, the court obtains jurisdiction to act.

Judicial admissions "eliminate the need for evidence on the subject matter of the

---

[*] Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, Southern Division, sitting by designation.

admission," as admitted facts are no longer at issue. *Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F.Supp. 1246, 1251 (E.D.Mo. 1976), *aff'd*, 561 F.2d 1275 (8th Cir.1977). Once made, the subject matter of the admission should not be reopened in the absence of a showing of exceptional circumstances. *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24 (4th Cir.1963), *cert. denied*, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964). This court has observed that "[u]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir.1980) (citations omitted). Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well. *See, e.g., Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir.1972).

NHS contends that its admission does not preclude it from challenging federal subject matter jurisdiction. It argues that "no action of the parties can confer subject-matter jurisdiction upon a federal court," quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). While NHS correctly quotes *Compagnie des Bauxites*, it overlooks the distinction between an admission that federal subject matter jurisdiction exists, and an admission of facts serving in part to establish federal subject matter jurisdiction. As the Supreme Court stated in an early case:

> Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission.

*Railway Co. v. Ramsey*, 89 U.S. 322, 327, 22 Wall. 322, 22 L.Ed. 823 (1874); *United States v. Anderson*, 503 F.2d 420, 422 (6th Cir.1974) (quoting *Ramsey*). *See also Wright v. Olin Corp.*, 697 F.2d 1172, 1177 n. 2 (4th Cir.1982) (finding that "properly drafted stipulations" of jurisdictional facts could serve to establish federal subject matter over a case).

■ Turning to NHS' admission that it is an FLSA employer, this court concludes that NHS has admitted a fact and the establishment of that fact creates federal subject matter jurisdiction. The admission does not constitute NHS' consent to subject matter jurisdiction itself, which no party may validly give, but it does constitute a statement that NHS is a type of employer. *Compagnie des Bauxites, supra*. The law then gives to the federal courts jurisdiction over cases against that type of employer.

The rule that jurisdictional facts which are admitted by the parties may establish subject matter jurisdiction over a case is a salutory one that promotes speedy and inexpensive litigation. Rule 11 of the Federal Rules of Civil Procedure requires the lawyer to certify that the allegations made in pleadings are grounded in fact, based on reasonable inquiry. The early elimination of litigation over facts forming the basis for the court's jurisdiction should be encouraged. NHS should be bound, and is bound by its admission, as it has made no showing of exceptional circumstances mandating relief from the admission. *New Amsterdam Casualty Co., supra*. While NHS attempted to withdraw its admission shortly before the trial began by filing a second answer, Judge Battisti clearly acted within his discretion in refusing to allow the second answer. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802–01, 28 L.Ed.2d 77 (1971); *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970–71 (6th Cir.1973), *cert. denied*, 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974).

As NHS has admitted facts establishing federal subject matter jurisdiction over this case, its appeal is without merit. Moreover, this court would reach the same conclusion even if NHS had not admitted its status as an FLSA employer. The record in this case establishes a variety of NHS activities that make it an "employer" within the meaning of FLSA.

## II.  *NHS as an FLSA Employer*

■ The Equal Pay Act provision of the FLSA forbids sex-based wage discrimina-

tion by any "employer having employees subject to any provisions of this section." 29 U.S.C. § 206(d)(1).[1] Section 206(a) describes employees as those "engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in commerce or in the production of goods for commerce." Ferguson asserts that NHS is an "enterprise engaged in commerce or in the production of goods for commerce."[2] Section 3(s) of the FLSA, 29 U.S.C. § 203(s), establishes a two-part definition for that term. First, the enterprise must have "employees engaged in commerce or in the production of goods for commerce or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." Second the enterprise must fall within at least one of six categories.[3] Ferguson maintains that NHS falls within the fourth category, as it "is engaged in the business of construction or reconstruction or both."

■ Ferguson points to a number of factors indicating that NHS has employees engaged in commerce. She first discusses the relationship of NHS with the Neighborhood Reinvestment Corporation ("NRC"), an organization established by Congress with the enactment of the Neighborhood

Reinvestment Corporation Act, 42 U.S.C. §§ 8101 *et seq.* The NRC was created to establish neighborhood housing service programs, monitor their progress, and provide them with contracts, grants, and technical assistance. 42 U.S.C. §§ 8105(a)(1) and (c)(2)(A). Congress appropriated federal funds to finance the activities of the NRC. § 8107. The record in this case reveals that the NRC provided personnel to NHS on at least two occasions, that the NRC aided NHS in choosing its staff, and that NHS personnel helped to plan and attended NRC workshops.

In addition to its participation in the NRC's nationwide efforts to improve the quality of neighborhood housing, NHS was intimately involved in other federal programs. Through contractual commitments with the City of Cleveland, NHS received $520,000 in federal funds to disburse. The money represented a portion of Cleveland's community development block grant, authorized by the Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301 *et seq.* NHS also administered federal funds through a rent subsidy program it ran with the City of Cleveland pursuant to the National Housing Act, 12 U.S.C. §§ 1701 *et seq.*[4]

---

1. Section 3(d) of the FLSA, 29 U.S.C. § 203(d), states simply that the term "employer"

    includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

2. Ferguson does not, and need not, argue that her own NHS functions and responsibilities were a part of interstate commerce. It is enough if NHS had other employees engaged in commerce. *See Maryland v. Wirtz,* 392 U.S. 183, 188, 88 S.Ct. 2017, 2019, 20 L.Ed.2d 1020 (1968); *Hodgson v. Travis Edwards, Inc.,* 465 F.2d 1050, 1052 (5th Cir.1972), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 685, 34 L.Ed.2d 665 (1972).

3. The six categories define "enterprise engaged in commerce or in the production of goods for commerce" to include any organization which

    1) . . . is an enterprise . . . whose annual gross volume of sales made or business done is not less than $250,000 . . .

    .    .    .    .    .

    2) is an enterprise which is comprised exclusively of one or more retail service establishments . . .
    3) is engaged in laundering, cleaning or repairing clothing or fabric;
    4) is engaged in the business of construction or reconstruction, or both;
    5) is engaged in the operation of a hospital [or other health care facility or school] or
    6) is an activity of a public agency.
29 U.S.C. § 203(s).

4. Ferguson also maintains that NHS employees were engaged in interstate commerce because they sent a multitude of reports through the mails across state lines. *See, e.g., Hodgsen v. N.G. Kallas Co.,* 480 F.2d 994, 995 (6th Cir.1973) (bookkeeping and tax reporting business was engaged in interstate commerce, and fell within the scope of the FLSA, because it produced tax reports in Michigan with the expectation that they would be sent to an Ohio IRS office); *Hodgson v. Travis Edwards, Inc., supra,* at 1052–53 (local Louisiana business was engaged in interstate commerce under the FLSA because its

NHS responds by asserting that the above evidence fails to establish any activity by its employees in interstate commerce. It argues that its federal partners may have been engaged in commerce, but that its own activities were strictly local in scope. NHS thus seeks to isolate itself from interstate commerce by maintaining that its activities do not extend across state lines. Instead, it merely receives supervision, guidance, and temporary employees from the NRC, an out-of-state organization. NHS further contends that it received the community development block grant money from the City of Cleveland, and not from the federal government or any other out-of-state entity.

NHS cannot reconcile its constricted view with the expansive approach towards the FLSA and the Commerce Clause long taken by the Supreme Court. In *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959), the Court stated that "within the tests of coverage fashioned by Congress, the [FLSA] has been construed liberally to apply to the furthest reaches consistent with congressional direction." In determining the coverage of the FLSA, long established Supreme Court precedent on the scope of the Commerce Clause must be considered. In cases such as *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), the Court held that strictly local activities having substantial economic ties with interstate commerce fall within the scope of the Commerce Clause. Thus a wheat farmer growing his crop for consumption on his own farm could be regulated under the Commerce Clause, because of the economic links between home consumption and the interstate wheat market. 317 U.S. at 125, 128–29, 63 S.Ct. at 90–91.

While NHS appears to improve housing only in Cleveland, its local effort is best viewed as a link in a nationwide chain of housing improvement activities. The record in this case reveals numerous connections between NHS and the NRC. NHS is also a disburser of substantial amounts of federal funds. It cannot hide behind the City of Cleveland, for the origin of the funds is what is significant.

Having concluded that the record establishes that NHS employees are engaged in commerce, it is necessary to determine whether NHS "is engaged in the business of construction or reconstruction, or both." Although it appears that NHS devotes many resources to the task of obtaining the financing for housing improvements, NHS also provides homeowners with a broad range of other services. Ferguson testified at trial that NHS personnel would examine the structure of houses to determine what rehabilitation was needed, produce cost estimates for the work, write specifications, prepare layout plans, consult with the homeowner about selecting a contractor, and monitor the progress of the work through completion. The record also indicates that NHS sometimes encountered problems finding reliable contractors to perform the housing rehabilitations, and was forced to serve as general contractor itself.

Courts considering the question of whether an enterprise is engaged in construction or reconstruction have construed this requirement broadly. In *Donovan v. S & L Dev. Co.*, 647 F.2d 14 (9th Cir.1981), the court stated:

> Coverage for enterprises "engaged in the business of construction or reconstruction" is not limited to construction contractors. Other courts, interpreting § 3(s)(4), have not required that a cover-

employees prepared and sent monthly reports across state lines to out-of-state officers and directors). Ferguson points to NHS' obligation to submit applications to Washington to obtain NRC grants, 24 C.F.R. § 4141.6 (1980), and to the evidence in the record that NHS applied for a Challenge Grant from the National Endowment for the Arts. She also relies on a letter from the NRC directing one of its employees

who was serving as NHS interim director to submit weekly reports to Washington. An examination of the record in this case, however, reveals no direct evidence that NHS actually sent a stream of reports across state lines. While it appears very likely that NHS sent such reports, the court will not rely on this argument in reaching its conclusion.

ed enterprise be engaged exclusively or even primarily in the construction business.

647 F.2d at 17 (footnote omitted). The Ninth Circuit found that a partnership whose sole asset was a building and which employed construction workers on a short-term basis was "engaged in the business of construction or reconstruction." *Id.* at 17–18.

The parties also cite *Donovan v. Pointon*, 717 F.2d 1320 (10th Cir.1983), *cert. denied*, 466 U.S. 934, 104 S.Ct. 1902, 80 L.Ed.2d 453 (1984). In that case, the court concluded that a company which prepared an area for home construction by clearing the undeveloped land, grading and contouring the grounds, installing culverts, and pouring concrete for curbs was "engaged in the business of construction or reconstruction." 717 F.2d at 1322. *See also Schultz v. W.R. Hartin & Son*, 428 F.2d 186 (4th Cir.1970) (reaching the same conclusion as to a mechanical contractor which installed and repaired central heating and air conditioning systems).

These cases establish that an enterprise does not have to consist solely of employees who saw planks and hammer nails for it to be "engaged in the business of construction or reconstruction." It is enough if the activities of an enterprise make construction or reconstruction feasible. Moreover, only a portion of the activities of the enterprise need be directed towards construction or reconstruction.

■ A significant part of the services provided by NHS directly involve the reconstruction of Cleveland housing. As a result, NHS is "engaged in the business of construction or reconstruction" within the meaning of § 3(s)(4) of the FLSA.

The record in this case thus establishes the existence of federal subject matter jurisdiction over NHS as an FLSA employer. The appeal of NHS would have to be dismissed even absent its admission.[5] Accordingly, the judgment of the district court is hereby affirmed.

KEITH, Circuit Judge, dissenting.

I respectfully dissent on two grounds. First, I do not agree with the majority's analysis of the consequences of defendant NHS' admission that it is a FLSA employer. The majority claims that there is a "distinction between an admission that federal subject matter jurisdiction exists, and an admission of facts serving in part to establish federal subject matter jurisdiction," and that NHS' admission is a "fact, and the establishment of that fact creates federal subject matter jurisdiction."

I fail to see how this "distinction" has any bearing on this case. Actually, NHS' admission that it is a FLSA employer seems more like a legal conclusion than fact. But any "fact-law" distinction is really besides the point. The real issue is whether subject matter jurisdiction can be challenged at any time, regardless of whether such jurisdiction is predicated upon factual admissions. Statute and case law make it clear that subject matter jurisdiction can be challenged at any time. Rule 12(h) of the Federal Rules of Civil Procedure provides:

"(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

---

**5.** As the court finds federal subject matter jurisdiction over Ferguson's FLSA claim, it is unnecessary to consider her argument based on the doctrine of pendent jurisdiction. Ferguson maintains that her complaint states a cause of action under Ohio law. She urges this court to exercise pendent jurisdiction over her state law claim even if no subject matter jurisdiction over the FLSA claim is found. There are two responses to this argument. First, the complaint merely invokes the jurisdiction of the court pursuant to the FLSA and the court's power "to hear and decide all pendent state claims." Com-

plaint, ¶ 1. This wholly fails to state any claim under Ohio law. Second, a federal court can exercise pendent jurisdiction over state law claims only in cases that include a federal claim having "substance sufficient to confer subject matter jurisdiction on the court." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (citation omitted). Thus, if this court lacked subject matter jurisdiction over Ferguson's FLSA claim, the entire case would have to be dismissed on that basis.

This Court recently stated in *Ambrose v. Welch*, 729 F.2d 1084 (6th Circuit 1984):

> "The lack of subject matter jurisdiction is a nonwaivable defect that may be raised at any time to justify dismissal of a pending action."

729 F.2d at 1085. Furthermore, defendant cannot be "estopped" from raising the issue of subject matter jurisdiction through his previous "factual" admissions. In *Rubin v. Buckman*, 727 F.2d 71 (3rd Cir. 1984), a plaintiff who originally falsely alleged the "fact" of Hong Kong citizenship to establish diversity jurisdiction, was nonetheless able to repudiate such citizenship, thus stripping the court of jurisdiction, in order to escape an adverse judgment. Clearly, if a party with "unclean hands" can challenge subject matter jurisdiction despite its "factual" admissions establishing jurisdiction, NHS, which had no nefarious intent in admitting it was an FLSA employer, can do likewise. In sum, the majority correctly states that the parties may admit facts which confer jurisdiction. However, such a proposition does not negate the equally well-established proposition that subject matter jurisdiction can be challenged at any time.

Second, I dissent on the ground that the record does not conclusively indicate that NHS was engaged in the requisite activities to make it come under FLSA. The majority cites *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), as the standard to be employed in determining whether a party has engaged in interstate commerce. Under *Filburn*, the Court held that even strictly local activities —i.e. a farmer growing wheat for strictly home consumption—can come under the power granted to Congress under the Commerce Clause. If *Filburn* were the correct standard, then the majority's analysis would be correct. However, the Supreme Court held long ago in *McLeod v. Threlkeld*, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943), that the "expansive" *Filburn* standard should not be employed in FLSA cases:

> In the Fair Labor Standards Act, Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority.... The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be part of it.

319 U.S. at 493, 497, 63 S.Ct. at 1249, 1251.

The jurisdictional "facts" which the majority cites as evidence of interstate commerce were never challenged or discussed below. NHS disputes the factual assertions upon which jurisdiction is premised. Accordingly, I would remand this case for a factual determination as to whether jurisdiction exists.