**John M. BROWN, Plaintiff-Appellant,**
v.
**TENNESSEE GAS PIPELINE COMPANY, Defendant-Appellee.**

No. 78–3186.

United States Court of Appeals,
Sixth Circuit.

Argued April 8, 1980.

Decided June 12, 1980.

Rehearing and Rehearing En Banc Denied Aug. 28, 1980.

As Corrected Sept. 11, 1980.

Robert Homes, Jr., August J. Bubert, Metairie, La., for plaintiff-appellant.

David O. Welch, Ashland, Ky., for defendant-appellee.

Before WEICK, LIVELY and KENNEDY, Circuit Judges.

WEICK, Circuit Judge.

Plaintiff-Appellant John Brown is appealing from the District Court's order granting judgment n. o. v. for the defendant after the jury had returned a verdict of $250,000 in Brown's favor. Jurisdiction was based on the diversity of citizenship between the parties. The primary issue

presented for review is whether a master/servant relationship existed between the plaintiff and Tennessee Gas Pipeline Co. (Tennessee Gas) at the time of the accident causing the plaintiff's injuries.

The District Court held that such a relationship did exist based on the jury's answer to one of several special interrogatories submitted to it. The District Court also held that the existence of this master/servant relationship would bar the plaintiff's suit because of the Kentucky Workmen's Compensation Statute which provides that an employee is barred from suing his employer in tort where the employee has received or is eligible to receive Workmen's Compensation benefits (KRS 342.015 (1956); now KRS 342.610 (1973)). We affirm.

John Brown was a welder foreman employed by Tex-Ten, Inc. The defendant, Tennessee Gas, entered into a contract with Tex-Ten for the purpose of having Tex-Ten perform federally mandated hydrostatic testing on Tennessee Gas' natural gas pipelines. The contract labeled Tex-Ten as an independent contractor, but it included a detailed set of specifications governing the testing operations. Control over the natural gas was specifically reserved to Tennessee Gas. The contract also provided that Tex-Ten would indemnify Tennessee Gas for any liability which might arise out of the testing operations even where such liability arose from the negligence of Tennessee Gas or its employees.

On August 27, 1971, while the plaintiff was working on a Tennessee Gas Pipeline in Carter County, Kentucky, an explosion occurred severely injuring the plaintiff. Mr. Brown claimed and received Workmen's Compensation benefits for his injuries. This action against Tennessee Gas was filed on August 7, 1972 seeking to recover damages in addition to the Workmen's Compensation benefits which Mr. Brown has already received from Tex-Ten's workmen's compensation insurer. Tennessee Gas filed a Third Party Complaint against Tex-Ten for indemnification under the contract. The District Court entered a final order prior to the trial holding Tex-Ten liable for any judgment entered against Tennessee Gas. Tex-Ten took over defense of this suit and is now the real party in interest.[1]

## I

The Kentucky Workmen's Compensation Statute (KRS 342.015 (1956)) which was in effect at the time of the injury limited the compensation which an employee could recover from his employer to the statutorily prescribed workmen's compensation benefits. The word "employer" defines both the scope of liability for Workmen's Compensation benefits and the scope of the bar against liability in tort. While normally a corporation which contracts with an independent contractor to do work on the corporation's own premises is considered a third party rather than an employer for the purposes of the Workmen's Compensation Statute,[2] the owner can become the "employer" of its contractor's employees if it exercises control "as to the means, or as to the mode, manner and details of the per-

1. Tex-Ten would not be subject to double liability if the plaintiff recovered in this suit since the Workmen's Compensation Statute provides that, if the injured employee recovers damages from a third party, then the Workmen's Compensation benefits paid to him must be reimbursed to the employer or its insurer. The Workmen's Compensation Statute also permits the employer or its insurer to sue any negligent third party either in their own names or in the name of the employee to recover any benefits which were paid. *See, Southern Quarries & Contracting Co. v. Hensley*, 313 Ky. 640, 232 S.W.2d 999 (1950). Tex-Ten is of course required as an indemnitor to assume the position of its indemnitee. Tex-Ten is thus precluded from directly asserting its own status as the plaintiff's employer. The statutory bar is avoided since Tex-Ten's liability is based on its contractual obligation rather than tort liability to the plaintiff. *See, Ashland Oil & Refining v. Bertram & Thacker*, 453 S.W.2d 591, 594–95 (Ky.1970).

2. *Bright v. Reynolds Metals Company*, 490 S.W.2d 474 (Ky.1973); and *Elkhorn-Hazard Coal Land Corp. v. Taylor*, 539 S.W.2d 101, 103 (Ky.1976). *See also, Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir. 1979), *cert. den.* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47.

formance of the work." *King v. Shelby Electric Cooperative Corp.*, 502 S.W.2d 659, 664 (Ky.1973). *See also, United Engineers and Constructors, Inc. v. Branham*, 550 S.W.2d 540 (Ky.1977); and *Mahan v. Litton*, 321 S.W.2d 243 (Ky.1959).

In this case the evidence that Tennessee Gas controlled the mode, manner and details of the operation at the time of the explosion was strong. In addition to the explicit specifications in the contract on how the work was to be conducted, Tennessee Gas had six inspectors to insure compliance with those specifications while Tex-Ten only employed approximately ten people, including supervisory personnel, to actually do the work.

Control over the details of the work was particularly evident after things started to go wrong on the day before the accident. There was testimony to the effect that every major decision was made by the Tennessee Gas inspectors right down to deciding which valve to turn and which bolt to loosen. Sometime during the night before the accident the Chief Inspector for Tennessee Gas put Tex-Ten on "force accounts." This meant that Tennessee Gas, in recognition of the fact that things were going wrong and Tex-Ten would be required to do more work than was contemplated under the contract, agreed to reimburse Tex-Ten for all expenses, including wages and equipment costs, until such time as the difficulties in the testing process were remedied. Tex-Ten remained on "force accounts" until August 30, 1971, three days after the explosion. There was testimony that because of the "force account" situation, Paul Curry, the Chief Inspector for Tennessee Gas, became interested in not only seeing that the work was done in accord with the specifications, but also that the work was done without any delays. It was the plaintiff's theory that the concern over possible delay was the primary consideration which lead Paul Curry to force Brown into the dangerous situation which ultimately caused the explosion.

## II

The appellant first contends that the Workmen's Compensation Statute cannot be relied upon to bar his claim against Tennessee Gas because the statutory bar imposed by the Workmen's Compensation Statute is an affirmative defense which must be raised in the pleadings and because the parties stipulated and admitted the independent contractor status of Tex-Ten. While the application of a statutory bar in a Workmen's Compensation Statute has generally been considered to be an affirmative defense, Kentucky has not decided the question. We need not decide the question in this case as we find that the defense was sufficiently raised under federal practice.

Tex-Ten was brought into the case by means of the Third Party Complaint of Tennessee Gas. In its Answer to the Third Party Complaint Tex-Ten alleged that:

> The plaintiff herein was an employee of Third-Party Defendant, entitled to receive workmen's compensation under KRS Chapter 342 and has received such compensation, and this action is barred by KRS 342.015(1).

A copy of this pleading was served on the plaintiff. While this pleading was framed to respond to the third-party complaint, it did point the plaintiff to the applicable statute. Any doubt that workmen's compensation remained an issue in the case should have been quelled when the issue of the Workmen's Compensation bar again arose in a bench conference during the defendant's opening statement (before the plaintiff's evidence was submitted). The Court ruled that any mention of the fact that the plaintiff had received workmen's compensation benefits would be inappropriate and that the Court would decide that issue as a matter of law. No objection to the introduction of this issue was made. The issue was again raised and discussed at length in the conference at the bench following the defendant's motion for a directed verdict at the close of the plaintiff's evidence. Again no objection to this issue was raised. Finally, the issue of the applicability of the Workmen's Compensation Statute was ar-

gued in the post-trial briefs. Only a technical and formalistic approach to pleadings would justify a finding that the issue was not properly raised. Such an approach has long since been discarded in federal practice.

■ The record clearly shows that the parties stipulated that Tex-Ten was an independent contractor in their contract and admitted this fact in their pleadings. Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. *Morelock v. N. C. R. Corp.*, 586 F.2d 1096, 1107 (6th Cir. 1978); *cert. den.* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); *Jackson v. United States*, 330 F.2d 679 (8th Cir. 1964); *Hall v. United States*, 314 F.Supp. 1135 (N.D.Cal. 1970); *Verkouteren v. District of Columbia*, 346 F.2d 842 (D.C. Cir. 1965). However, in this case the fact that the general relationship between Tex-Ten and Tennessee Gas is one of owner/independent contractor does not preclude a finding that at some specific point a master/servant relationship existed between Tennessee Gas and Tex-Ten employees. *Mahan v. Litton*, 321 S.W.2d 243 (Ky.1959).

### III

■ The appellant also challenges the clarity and content of the interrogatory and the jury instruction dealing with the interrogatory upon which the District Court based its finding that a master/servant relationship existed between Brown and Tennessee Gas at the time of the accident. The interrogatory reads as follows:

(1) Did the Defendant, Tennessee Gas Company exercise control over the employees of Tex-Ten, Inc. as to the details of the work as to when, where and how such work was to be performed such employees performed or failed to perform those matters which the jury believes constituted the cause or causes of the pipeline explosion in which plaintiff was involved on August 27, 1971?

Answer YES or NO:  Yes

The District Court further explained the interrogatory in the following instruction:

What I want you to do there, ladies and gentlemen, is to understand the word "control" to mean to have the apparent power and authority and to use that authority to determine what a person does and when he does it and how he does it. That's what I mean by control of the details of the work. When it comes down to asking you about those matters which constituted the cause or causes of the pipe line explosion and I want you to consider what you believe to be the substantial contributing causes or factors that caused the pipe line to fail, and there is no evidence to the contrary, and whether or not the work involved there, whatever it was, was a matter within the meaning of this first question.

Neither the interrogatory nor the instruction was a model of clarity. The interrogatory was grammatically incorrect, but it leaves the reader with a sense of what the Court was asking. The instruction clarifies that the interrogatory is asking about control over the details of the work as to when, where and how such work would be performed which caused the accident.

By limiting the control question to the time frame around the accident, the Court precluded the jury from finding, contrary to the stipulated fact, that Tennessee Gas generally exercised control over the whole project thus rendering Tex-Ten an employee and not an independent contractor. There was evidence that the amount of control increased on the day before the accident. It was to this time frame that the Court was directing the jury.

Nor is the interrogatory insufficient because it did not specifically address the status of John Brown and the amount of control over him. If, during this temporary emergency, Tennessee Gas controlled the details of the work and the manner in which is was to be performed, then *all* of the employees of Tex-Ten became servants of Tennessee Gas. *See, United States Engineers & Constructors, Inc. v. Branham*, 550 S.W.2d 540 (Ky.1977).

## IV

 Finally, the appellant contends that the District Court abused its discretion in informing counsel that the Court intended to submit special interrogatories to the jury after both sides had concluded their closing arguments. The appellant claims that the "time and manner in which the interrogatories were put to the jury prevented plaintiff's counsel from discussing them in closing argument, so that counsel had no chance to argue to the jury as to what their answer should be to this question which the District Court felt was so crucial." In making this argument the appellant fundamentally misunderstands the purpose for which special interrogatories are used. Special interrogatories are used to test the jury's verdict. This purpose would be defeated if counsel was permitted to argue to the jury on what the answer to the interrogatory should be. In this regard special interrogatories are very different from instructions to the jury as instructions are given for the purpose of informing the jury and guiding them in their deliberations. The appellant did not request the court to submit any special interrogatories to the jury.

To the extent that the appellant is claiming that he was taken by surprise that the issue of control over the details of the work was presented to the jury, this surprise is not justified by the record. The issue of control was argued at length in the conference following the defendant's motion for a directed verdict. At this point the plaintiff's counsel argued:

> An owner can always come on to a job and direct his independent contractor to do a particular thing. Whether he was in control of the situation is something that has to be determined by all of the facts in the case. I again repeat, I would ask that the jury be permitted to do that. (Trial transcript at page 1055)

The controlling factual issue was presented to the jury. The jury resolved the factual issue in accord with the evidence. Judgment for the defendants was rendered on the basis of the jury's answer to the special interrogatory. The answer to this interrogatory question was not inconsistent with any of the answers to the other interrogatories submitted. We find no error in the proceedings below. The judgment of the District Court is affirmed.