**ALLIED MACHINERY, INC. and Lonnie Allen, Appellants,**

v.

**Lehman WILSON and Francis Ruth Wilson and Liberty Mutual Insurance Company, Appellees.**

Court of Appeals of Kentucky.

March 30, 1984.

As Modified April 6, 1984.

Case Ordered Published by Court of Appeals Aug. 10, 1984.

Robert L. Milby, Hamm, Milby & Ridings, London, for appellants.

A.P. Gullett, III, James D. Holliday, Hazard, for appellees, Lehman and Francis Wilson.

Michael Kinner, Prestonsburg, for appellee, Liberty Mut. Ins. Co.

Before McDONALD, REYNOLDS and WHITE, JJ.

REYNOLDS, Judge.

Leslie Circuit Court entered judgment pursuant to jury verdict awarding plaintiff-appellee Lehman Wilson damages for personal injuries resulting from the negligence of Allied Machinery, Inc. through its employee, Lonnie Allen, appellants herein. The judgment allowed Wilson's employer's compensation carrier, appellee Liberty Mutual Insurance Company, to recoup workers' compensation benefits paid to Lehman Wilson prior to the trial. Since we determine appellees' remedy was limited to workers' compensation, we reverse the judgment with directions for the complaint to be dismissed.

Dingo Coal Mining Company employed 53-year old Lehman Wilson as a "greaser" for its heavy equipment. Dingo's 35-ton Wavco backdump truck, used to haul dirt, broke down. Allied sent its field mechanic, Lonnie Allen, to Dingo's premises to correct the problem. The mechanic found a hydraulic pump in the steering system had failed, flooding the truck's transmission with oil. The mechanic returned with parts needed to repair the truck and Wilson and a Dingo truck driver were assigned to help him. After three days of repair work assisted by the two Dingo employees, the hydraulic pump was replaced and the transmission had to then be drained of oil and refilled with transmission fluid.

Wilson testified that on 22 October 1979, the mechanic sent him under the truck to check the transmission. Wilson knew the truck had to be turned on before the transmission fluid could be checked, since the Dingo driver had turned it on and off several times during that day under the mechanic's directions. Testimony conflicts as to the length of time Wilson was under the truck, but while he was under it, the mechanic directed the Dingo driver to "bottom out" the truck, meaning to turn the wheel all the way to one side. When he did, Wilson was caught between the six-seven foot high right wheel and tire frame, sustaining injuries. The mechanic's negligence is not at issue in this appeal.

Wilson filed claims for workers' compensation benefits against Dingo and its compensation carrier Liberty Mutual for disability resulting from the 22 October 1979 injury and for pneumoconiosis. The Workers' Compensation Board found on conflicting medical evidence that appellee sustained a 15% occupational disability due solely to his injury; additionally that appellee became totally and permanently disabled by pneumoconiosis/silicosis as of 22 October 1979.

Generally, where an employer is subject to the provisions of the Workers' Compen-

sation Act and his employee has not affirmatively rejected coverage, the employee's sole remedy is through workers' compensation benefits. KRS 342.395. The employee in effect trades the uncertainty of a civil action for a modest but assured recovery of compensation benefits.

Where an injury is sustained "... under circumstances creating in some other person than the employer a legal liability to pay damages ...," KRS 342.700 permits an injured employee to proceed both against the employer for compensation and by civil action against the KRS 342.700 "statutory" employer but limits recovery to one entity.

Appellant insists that Allied was not "some other person" than the employer, KRS 342.700 was not triggered, and Leslie Circuit Court lacked jurisdiction over the action below. Appellee counters that the "statutory employer" issue was not preserved for our review. We find this issue was preserved; moreover, a careful reading of recent Kentucky case law persuades us that appellant is correct.

■ The gist of appellees' contention is that "statutory employer" was an affirmative defense which appellants did not plead below. Plainly the statutory bar is a "matter constituting an avoidance" within the ambit of CR 8.03 which should be pled as an affirmative defense; however, we determine from the record that the issue was tried by consent. Allied's answer and amended answer discussed the requisites of KRS 342.700 although they did not cite it specifically. Both parties explored the employment relationship between Wilson and Dingo and Wilson and Allied's mechanic at the time of his injury at trial. At the close of plaintiff's evidence, Allied moved the court alternatively to dismiss the complaint and intervening complaint or direct a verdict for defendants specifically arguing that the court lacked jurisdiction over the action because of the provisions of the Workers' Compensation Act. Plaintiff responded to the motion but did not contend that the statute was an affirmative defense. Not until the close of defendants' evidence when Allied unsuccessfully moved

the court to amend its answer to conform to the evidence of loaned servant and statutory bar did Wilson's counsel respond that this was an affirmative defense which defendants waived by failing to plead it before trial. Although the call is close, we believe appellees were aware of and not unfairly surprised by the loaned servant/statutory employer issue.

We hold that Wilson was the loaned servant of Allied at the time of his injury, therefore Allied was not "some other person than the employer." Because we reverse on this issue we do not address whether the damages were excessive.

■ Kentucky courts have long wrestled with the question of what entity is "some other person" than the employer. Where a general employer's worker is sent to assist a special employer's work as Wilson was to assist Allied's mechanic, that worker may become the "loaned servant" of the special employer in the eyes of the law. If one is a "loaned servant" of the special employer, the special employer is *not* "some other person than the employer" and the statutory bar does not apply. The special employer in this situation becomes the "statutory employer." Larson posits a three-pronged test for loaned servant: 1) the worker has an expressed or implied contract of hire with the special employer, 2) the work being done is essentially that of the special employer, and 3) the special employer has a right to control the details of the work. Larson, *Law of Workers' Compensation,* § 48, cited with approval in *Rice v. Conley,* Ky., 414 S.W.2d 138, 140 (1967), *as modified on denial of reh'g,* 1967.

■ Wilson's testimony reflects his knowledge of and assent to working under the direction of Allied's mechanic. Repair of the damage caused by the broken hydraulic pump was essentially the work of Allied. The Dingo employees were taking orders from Allied's mechanic during the days it took to repair the truck. We find that Larson's criteria were met.

■■ Historically courts have modified the scope of the statutory employer immu-

nity. One employee cannot bring a civil action against a fellow employee for personal injuries. *See Miller v. Scott*, Ky., 339 S.W.2d 941 (1960); *George Petro, Inc. v. Bailey*, Ky., 438 S.W.2d 88 (1968). A subcontractor's employee cannot recover from a prime contractor on the same job due to the fact that he could get workers' compensation from the prime therefore the prime is a statutory employer and not some other person than the subcontractor. *See McEvilly v. Myers*, 211 Ky. 31, 276 S.W. 1068 (1925).

While earlier cases attempted to narrow the scope of employer immunity by focusing on the contract relationship between the employee and the employer whose work was being done at that time (*Rice, supra*), more recent cases have effectively broadened its scope by focusing on who had the right to control the details of the work at the time of the injury. *See United Eng'rs and Constructors, Inc. v. Branham*, Ky., 550 S.W.2d 540 (1977); *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450 (E.D.Ky. 1980).

Indeed, Justice Palmore, expressing the opinion of a unanimous court in *Branham*, stated that "the main dispositive criterion" is the alleged principal/master's right to control the details of the work at the time of the injurious event. In *Branham*, premises owner Armco contracted with prime contractor United. Prime needed a crane for part of the work which it leased "fully operated and maintained" from Lohman. Injured worker Branham was a member of Lohman's crane crew. Branham was injured when United workers who were assisting him to lower the crane gantry allowed it to drop on him. At the time he was injured, Branham testified that Lohman's employees were controlling the mechanical operation of the crane. The prime (United) had no control over the details of the crane's operation, its authority extending only to directing where the dirt was to be put. The *Branham* court noted that lowering the gantry was peculiarly within the expertise of Lohman's crane crew. The Supreme Court held that the prime's employees (United) were loaned servants of the crane crew therefore the prime was not "some other person" than the crane crew employer. For this reason, the Supreme Court reversed a jury verdict for Branham in negligence and directed dismissal of the prime as party defendant below. In dicta such court buttressed its holding with a finding that for workers' compensation purposes Lohman was a subcontractor of United barring suit up-the-ladder. KRS 342.700(2).

The case *sub judice* is not a prime contractor/subcontractor situation. While the record lacks evidence of a written contract between Dingo and Allied, Wilson himself testified to his understanding and assent to assist the Allied mechanic. The evidence of Allied's mechanic's control over the details of the work is stronger here than in *Branham*. Unlike the United employees in *Branham* who were called over to assist the crane crew in a single maneuver, Wilson and the Dingo driver had been under the direction of Allied's mechanic for three days at the time Wilson's accident occurred. Wilson testified that Allied's mechanic had sent him under the truck to check the transmission shortly before his injury. We conclude that Wilson was the loaned employee of Allied at the time he was injured. Since Allied is therefore a "statutory employer" under the Workers' Compensation Act, Wilson had no cause of action against it or employee Lonnie Allen.

A similar result was reached in the Sixth Circuit of the United States Court of Appeals in *Brown, supra*. There premises owner Tennessee Gas contracted with jobber Tex-Ten which employed Brown. Brown was injured in an explosion which occurred during the jobber's readying the premises for hydrostatic testing of its gas pipelines. The *Brown* court affirmed the lower court's holding that at the time Brown was injured premises owner Tennessee Gas was his "statutory employer" because Tennessee Gas made every major decision about the details of the work, exercising control as to the means, mode, manner and details of the performance of the work. The same reasoning applies to Al-

lied herein. *See also King v. Shelby Electric Cooperative Corp.*, Ky., 502 S.W.2d 659, 664 (1973).

For the foregoing reasons we reverse the judgment and remand this case with directions to Leslie Circuit Court to dismiss the complaint.

McDONALD, J., concurs with result only.

WHITE, J., dissents.

WHITE, Judge, dissenting.

I respectfully dissent to the majority holding herein because I do not accept the reasoning nor the conclusion reached. I feel that the result is far too harsh and is based upon a misinterpreted logic that does not support the holding under the given facts in this matter.

The majority concludes that the appellee worker was a "loaned servant" and thus became an employee of the appellant so as to invoke the immunity inuring to a "statutory employer."

It was argued (and apparently accepted by the majority) that the issue of such immunity was a special affirmative defense that required it to be pled in accordance with CR 8.03 but that it was also an issue which had been tried with consent. Although it may be conceded that issues which are to be relied upon should be adequately set forth in pleadings, since it effectively permits judicial economy and tends to avoid the trial court's overlooking such issues, I do not believe that that procedural technicality is the linchpin to a decision in this case. The issue, as I see it, of whether or not the appellee Wilson was a "loaned servant" of appellant is a question of fact to be resolved by the jury from the evidence in light of the legal definition applicable.

There is no question here that Wilson was at all times the employee of Dingo. He was obeying Dingo's order when he went to work on Dingo's equipment under the limited supervision of Allied's mechanic, Allen. It is admitted that Allen's negligence is not in issue and that such is Allied's negligence. Allied's escape, if at all, is purely a matter of avoidance by being a statutory employer.

The majority has held that the three-pronged test of a "loaned servant" as defined by Larson was met in this case. I have sincere difficulty in reaching the same result. The majority admits that it is a close call.

There certainly is no *expressed* contract of hire. Thus, it must be held that there was an *implied* contract of hire with the special employer in order to comport with the first prong of the test. How it can be said here that Wilson in anywise contracted for hire with Allied strains my understanding. Whatever may have been understood between Dingo and Allied is of little or no concern since nothing is said, but in any event Wilson would not have been where he was except at the direct orders of Dingo. He had absolutely no opportunity to exert or assert a real choice in this matter. How it can be assumed that he impliedly entered into a special relationship of employment with Allied is beyond credulity. When one accepts employment today, he is aware of the provisions of workers' compensation and that they supplant the common law rights of litigation he may have otherwise had. However, I believe it is safe to say he is completely unaware of all the subtle subterfuges that may by operation of law be imposed. In equity and conscience I cannot impose such limitations unless some notice of those imposed restrictions is made known to the employee and he thereby willingly assumes such risk at the hands of the special employer.

For this reason, I would affirm the lower court's judgment.