762 F.2d 1010
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RUDY v. NEELY, PLAINTIFF-APPELLANT,
v.
ROADWAY EXPRESS, INC., DEFENDANT-APPELLEE.
 NO. 84-5023
 United States Court of Appeals, Sixth Circuit.
 3/4/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 Before: ENGEL and MARTIN, Circuit Judges; and PORTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This was a suit for employment discrimination under 42 U.S.C. Sec. 2000e-2. The district court held that the plaintiff's discharge discriminated against him on the basis of his religion and therefore awarded him reinstatement and retroactive seniority, costs, attorney's fees, and an injunction against further discrimination. The district court refused, however, to award back pay. Plaintiff appealed, and we reverse.
 
 
 2
 The plaintiff, Rudy Neely, is a member of the Worldwide Church of God. It is contrary to his religion to work between Friday sunset and Saturday sunset. Neely worked for the defendant, Roadway Express, Inc., from August 1974 through his discharge on September 8, 1979, and adhered to this religious tenet throughout his employment.
 
 
 3
 Neely was a full-time unassigned employee at the Roadway trucking terminal in Nashville, Tennessee. To meet Roadway's need for flexibility, unassigned employees were assigned shifts one day in advance. They were guaranteed five days of work out of seven and at least eight hours off between shifts. There was also a complex set of seniority rules.
 
 
 4
 In the last two weeks of August 1979, it became apparent that unassigned workers would be expected to work more Friday nights. Neely approached James Staley, the new terminal manager, to advise him of his Sabbath observance. Staley offered no accommodations and told Neely he would be expected to work as any other unassigned employee.
 
 
 5
 Neely subsequently was assigned to work on Friday night, August 31, 1979. He refused to work that night and received a written warning letter on September 4 for failure to report to his assigned shift. On Wednesday, September 5, Staley sent Neely a telegram telling him to come in that Friday or he would be automatically discharged. Neely still refused to work and was told the next day that he was no longer employed.
 
 
 6
 This resulting suit was tried before the district judge on May 24 and 25, 1983. In an opinion delivered on November 2, 1983, the court held that Roadway unlawfully discriminated against Neely on the basis of his religion. The court held, however, that Neely could have been accommodated without undue hardship only by a leave of absence or a layoff out of seniority. It was unclear to the court how long Neely would have remained on leave or layoff, and the court therefore considered damages to be speculative. For this reason, and because Neely contributed to his problems by failing to contact the union about his situation or to discuss the problem more fully with his employer, the court refused to award back pay.
 
 
 7
 On November 14, 1983, plaintiff timely moved for additional and amended findings of fact and amendment of the court's memorandum and order of November 2. On November 15, defendant entered a notice of appeal to this court. On November 23, the court denied plaintiff's motion for amendment. On December 20, plaintiff timely entered a notice of appeal. Defendant did not enter any notice of appeal after November 23, 1983. By order of August 9, 1984, defendant's appeal, No. 83-5872, was dismissed for failure to appeal from the final judgment of the district court. We are thus concerned only with plaintiff's appeal of the denial of back pay, No. 84-5023.
 
 
 8
 The Supreme Court made a general analysis of awards of back pay under 42 U.S.C. Secs. 2000e to 2000e-17 in Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975). The Court held that, although the district court's decision whether to award back pay is equitable or discretionary in nature,
 
 
 9
 Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the 'fashion[ing] [of] the most complete relief possible.'
 
 
 10
 It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.[14] The courts of appeals must maintain a consistent and principled application of the backpay provision, consonant with the twin statutory objectives, while at the same time recognizing that the trial court will often have the keener appreciation of those facts and circumstances peculiar to particular cases.
 
 
 11
 14. It is necessary, therefore, that if a district court does decline to award backpay, it carefully articulate its reasons.
 
 
 12
 422 U.S. at 421-22 & n.14.
 
 
 13
 The district court's primary reason for refusing to award back pay was that the appropriate amount of back pay would be speculative. The parties, however, stipulated as follows in the pretrial order:
 
 
 14
 The back wages to which Mr. Neely would be entitled for relief in this case for the years 1979 and 1980, respectively, are $4,021.13 and $11,018.28 less any amounts found appropriate by the Court to be deducted for Friday night shifts that the Plaintiff would not have worked. The Plaintiff has suffered no lost wages for 1981.
 
 
 15
 Pretrial Order at 13, Joint Appendix at 35. When the subject of damages came up at trial, the plaintiff's attorney, Harvel Rogers, the defendant's attorney, William Ozier, and the court all considered the stipulation binding.
 
 
 16
 Q. [by Mr. Rogers] So if we wanted to look at what Mr. Neely might have earned at Roadway, it would be appropriate to look at Mr. Davenport's earnings?
 
 
 17
 A. Well, true enough. However, I'm not sure that there wasn't some more work available for Mr. Neely at the time.
 
 
 18
 MR. OZIER: Your Honor, we stipulated to that.
 
 
 19
 THE COURT: Sir?
 
 
 20
 MR. OZIER: We had stipulated to the damages that the plaintiff is claiming. I don't know if there is any need to his testimony.
 
 
 21
 THE COURT: I didn't realize there was that stipulation. Fine. Go ahead.
 
 
 22
 MR. ROGERS: There is one little thing, though. He left the things open on that, Your Honor, as far as showing possibly that some of the time he might not have been able to work because he would have been scheduled on the Sabbath and so, therefore he might have only gotten in four days a week where Mr. Davenport got in five. I would like to get in a few factors in regard to that.
 
 
 23
 THE COURT: Is the stipulation in the pre-trial order?
 
 
 24
 MR. ROGERS: Yes, sir.
 
 
 25
 THE COURT: Let's see what it says.
 
 
 26
 MR. ROGERS: It's on page 13.
 
 
 27
 Your Honor, we're perfectly willing to stipulate to those amounts there with Mr. Ozier who wanted this wiggle factor in there.
 
 
 28
 MR. OZIER: Your Honor, we're perfectly satisfied with the dollar amount in the stipulation.
 
 
 29
 THE COURT: The stipulation is binding on you both. Let's go forward, Mr. Rogers.
 
 
 30
 MR. ROGERS: All right, sir. We have no problem with that.
 
 
 31
 Transcript of Trial Hearing at 51-52, Joint Appendix at 105-06.
 
 
 32
 Under federal law, stipulations are generally binding on the parties and the court. Brown v. Tennessee Gas Pipeline Co., 623 F.2d 450, 454 (6th Cir. 1980). The Court could not hold damages to be so speculative as to preclude an award of back pay when the parties already had agreed that appropriate damages totaled $15,039.41.
 
 
 33
 The district court's alternative ground for denying back pay was that plaintiff contributed to his problems by neglecting to contact the union about his situation or to discuss the problem more fully with his employer. But the burden was on the employer to make an effort at accommodation and, if unsuccessful, to demonstrate that it was unable to reasonably accommodate the plaintiff's religious beliefs without undue hardship. McDaniel v. Essex International, Inc., 571 F.2d 338, 343 (6th Cir. 1978). Plaintiff's lack of effort might be one factor to consider with others in denying an award of back pay, but it will not alone justify the denial.
 
 
 34
 Plaintiff asks that the award of back pay be with prejudgment interest at the IRS adjusted prime rate. The matter of prejudgment interest in employment discrimination cases is for the discretion of the trial court. EEOC v. Wooster Brush Co. Employees Benefit Association, 727 F.2d 566, 579 (6th Cir. 1984).
 
 
 35
 The case is reversed and remanded to the district court for an award of the stipulated back pay and for a further determination whether prejudgment interest is appropriate and, if so, how it is to be computed.
 
 
 
 *
 Honorable David S. Porter, Senior United States District Judge for the Southern District of Ohio, sitting by designation