### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

### v.

### Jeffrey P. JORISSEN, Mary A. Petrella, and Gary A. Shiffman, Defendants.

### No. CIV. 06–10845.

United States District Court, E.D. Michigan, Southern Division.

Jan. 3, 2007.

Cheryl Scarboro, H. Michael Semler, Peter H. Bresnan, U.S. Securities and Exchange Commission, Washington, DC, Ellen E. Christensen, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

Jeffrey G. Heuer, Jaffe, Raitt, Southfield, MI, Patrick B. Green, Thomas G. McNeill, Dickinson Wright, David F. DuMouchel, George B. Donnini, Philip J. Kessler, Laurie J. Michelson, Steven M. Ribiat, Butzel Long, Detroit, MI, for Defendants.

## OPINION AND ORDER DENYING DEFENDANT SHIFFMAN'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

Defendant Gary Shiffman brings motions for judgment on the pleadings and for summary judgment on a claim brought by the Securities and Exchange Commission (S.E.C.) alleging he violated 17 C.F.R. § 240.13b2–1. This rule proscribes any person from "directly or indirectly, falsify[ing] or caus[ing] to be falsified, any book, record, or account subject" to the federal securities laws. Because I find that the S.E.C. has both stated a claim upon which relief can be granted, and that it has provided sufficient evidence to cre-

ate a dispute of material fact as to Shiffman's culpability, I hereby DENY both motions.

## I. BACKGROUND OF THE CASE

### A. Allegations in the Pleadings

Gary Shiffman, Jeffrey Jorissen, and Mary Petrella were corporate officers of Sun Communities, Inc. (Sun), a publicly traded company, from at least 2000 to 2002. Shiffman was the Chief Executive Officer (CEO), Jorissen was the Chief Financial Officer (CFO), and Petrella was the Controller. During this time, it is alleged that Sun engaged in false financial record-keeping and reporting in violation of federal securities laws. Six claims are brought against the Defendants,[1] but only one, claim 5, implicates Shiffman.

### 1. Allegations against Shiffman

Shiffman allegedly caused a false report to be made to the S.E.C. by misrepresenting a transaction to Jorissen, the CFO. To decrease its interest in SunChamp, one of its subsidiaries, Sun transferred portions of its interest in that subsidiary to investors Friedman and Horowitz in exchange for cash and non-recourse notes. (Compl.¶ 36.) This transaction was completed in July of 2001. When closing the books for the first quarter of 2001, Shiffman informed Jorissen that "agreements had already been finalized to transfer portions of Sun's interest in SunChamp to Friedman and Horowitz." (Compl.¶ 45.) Allegedly Jorissen then, "based on Shiffman's statement," directed that the Friedman and Horowitz sales be "accounted for as if they had been consummated on January 1, 2001." (Id.)

(Pltf. Resp. Br. Mot. for Summ. J. 3.)

---

1. No claim is brought against Sun itself because Sun has already settled with the S.E.C.

The S.E.C. alleges it was improper to account for the sales of those interests at that time because a transfer of interest had not occurred. Transactions in real estate are governed by Financial Accounting Standard Board rule 66 (FAS 66), a rule that sets four conditions that must be met before a transaction in real estate [2] is consummated. (*See* Compl. ¶ 43.) Such a transaction must be consummated before it may be listed on an accounting statement. Accounting for a sale before each of the four conditions is met is contrary to generally accepted accounting principles (GAAP). (*Id.*) Because, as the S.E.C. alleges, this sale was accounted for before all of these requirements were met, Sun reported falsely inflated assets because it did not account for losses suffered in Sun-Champ at the time the losses were incurred.[3] The S.E.C. has further alleged that the FAS 66 conditions were never fully met for this transaction, meaning the real estate was never legally sold.[4] (Compl.¶ 37.)

### 2. Allegations Against Jorissen Relevant to Shiffman's Motion

To understand the claim made against Shiffman, as well as the arguments by Shiffman for why the claim against him should be dismissed, it is necessary to understand the allegations against Jorissen. Before making its allegation against Shiffman, the S.E.C. alleges that Jorissen, the CFO, violated federal securities law by failing to apply GAAP in several quarterly and annual reports he made on behalf of Sun. One particular failure to use GAAP was Jorissen's conversion of Sun's accounting for its interest in SunChamp from the equity accounting method, a method which accounts for gains and losses "based on the 'latest available financial statement' regarding the investment," (Compl.¶ 29), to the cost method, where "gains or losses are not recognized until the sale . . . of the investment." (Compl.¶ 22.) The equity method is to be used if "the investor has the ability to exercise significant influence over the investment," and the cost accounting method is to be used when the investor does not have such significant influence. (Compl.¶ 21.) If an investor has greater than a 20% share in an investment, significant influence is presumed and the equity method is required. (*Id.*) If the investor has less than a 20% share in the investment, a factual question arises as to which of the two methods is proper.[5] (*Id.*) The S.E.C. alleges that Sun maintained significant control of SunChamp even after it made the transfer to Friedman and Horowitz, which Jorissen believed dropped

---

**2.** SunChamp is "a joint venture involved in the development of manufactured housing communities." (Compl.¶ 1.) It "acquires land, improves it for use as homesites, and leases the sites to individuals who have purchased mobile homes." (*Id.* at ¶ 17.)

**3.** The importance of the "sale" at this time was not for any infusion of assets into the company, but instead because in combination with the allegedly improper use of the cost accounting method Sun did not report the losses of SunChamp as its own at the time SunChamp was incurring the losses. The S.E.C. alleges it would have done so if it was following GAAP through use of the equity method of accounting.

**4.** This is because the sale to Friedman and Horowitz contained non-recourse notes as consideration, which did not "transfer the risks and rewards of ownership for accounting purposes" and therefore was not a " 'sale[ ]' of [an] equity interest[ ]" according to FAS 66. (Compl.¶ 37.)

**5.** Jorissen disputes this characterization of the rule, but that is irrelevant for the motion for judgment on the pleadings as a matter of law, and irrelevant for the motion for summary judgment since Shiffman is not contesting the falsity of the statement at this time. (Def't.Supp.Br.2.)

Sun's interest in the entity below 20%.[6] (Compl. ¶ 35.)

### 3. Why Shiffman Claims No Claim Is Stated

Shiffman asserts two primary reasons the S.E.C. has failed to state a claim. First, he argues that Rule 13b2–1 does not apply to this situation because it applies only to transactions, and the S.E.C. has admitted in its Complaint that according to FAS 66 no transaction occurred between Sun and Friedman and Horowitz. (Mot. to Dismiss 11–12.) Second, Shiffman argues no claim exists against him because by the facts contained in the Complaint, he could not have caused the falsification. (*Id.* at 8–11.) If Jorissen had been using the equity accounting method in accordance with GAAP at the time of Shiffman's statement, the sale of interest to Friedman and Horowitz would not have affected the accounting statement because the other three FAS 66 requirements had not been met, and therefore Shiffman could not have caused, either directly or indirectly, the false filing. Also, Shiffman alleges that all he caused was the erroneous report to be made two months prior to when it would have been made absent his actions. Shiffman argues that because Jorissen ordered the improper switch of accounting methods, and the cost accounting method Jorissen was improperly using would have improperly considered the transfer in the third quarter of 2001 absent any statement by Shiffman, he only caused the error to occur two quarters earlier than it would have absent his actions, and therefore he did not cause the false filing for purposes of the rule.

### B. Factual Record for Summary Judgment

The sole evidence Shiffman has presented with his motion for summary judgment is an affidavit by Jorissen. In this affidavit, Jorissen states that he did not understand Shiffman's statement that the interests purchased by Friedman and Horowitz were "sold" to mean that those transactions were finalized, but instead that he "knew that those agreements . . . had not been finalized." (Jorissen Aff. ¶¶ 7 & 11.) Jorissen states that Shiffman had told him "he had reached an agreement to sell portions of Sun's interest in SunChamp" in the first quarter of 2001, and that agreement "would be closed in the future." (*Id.* at ¶¶ 5 & 7.) After the conversation with Shiffman, Jorissen "decided to consider the *effect* to [*sic*] the SunChamp Sales in the first quarter of 2001 for the purpose of deciding to use the cost method of accounting for Sun's SunChamp interest." (*Id.* at ¶ 12 (emphasis in original).)

The S.E.C. presented ten exhibits to support its position that summary judgment in favor of Shiffman is improper; five portions of investigative testimony taken by the S.E.C. while it was determining if it should take action in this matter and five other documents of correspondence regarding this transaction. The evidence most relevant to this motion is testimony given by Jorissen regarding his decision to consider the Friedman and Horowitz transactions as having occurred in the first quarter for accounting purposes. Jorissen stated that he accounted for the Friedman and Horowitz transactions in the first quarter of 2001 after Shiffman told him that the equity to be purchased by Friedman and Horowitz was

---

**6.** The S.E.C. also alleges that Sun's interest in SunChamp never dropped below 50%, because the transactions to Friedman and Horo- witz, as well as other investors, should never have been recorded. (Compl. ¶ 42.)

"sold" [7] and that a deal for sales of equity in SunChamp was "done." [8] Further evidence shows that important terms of these deals, such as the applicable interest rate, were not finally determined until July of 2001. (Pltf. Resp. Br. to Mot. for Summ. J. Ex. H (indicating that Shiffman and Friedman spoke on the evening of July 2 and resolved outstanding issues including the interest rate).) Also, Jorissen testified that a presentation was given at a board meeting indicating the company's plan to switch its accounting method for SunChamp from the equity method to the cost method if the company's interest in SunChamp should drop below 20%, and that Shiffman was probably aware of that policy. (Jorissen Investigative Test. Feb. 10, 2005 78:20—79:7.) [9]

### C. Procedural Background

This court heard oral argument on both of Shiffman's motions on October 25, 2006. After learning that the S.E.C. had only presented to this Court excerpts of the investigative testimony it had taken of parties related to these motions, I requested that the parties submit those transcripts of investigative testimony in their entirety as well as another round of briefing addressing the transcripts in their entirety if the parties so desired. A second hearing on both motions was then held December 7, 2006. After taking both motions under advisement at that hearing, I now issue this opinion to decide both of them.

## II. ANALYSIS OF MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Standard of Review

This motion, brought under Fed. R.Civ.P. 12(c), is to be handled as a motion for failure to state a claim under Fed. R.Civ.P. 12(b)(6). If a motion brought under Rule 12(c) alleges a defect in the pleadings described in any of Rules 12(b)(1), (2), (6), or (7), it is to be treated as a motion brought under the applicable 12(b) rule. 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.2004). Defendant Shiffman's motion alleges that the Complaint fails to state a claim against him due to its internal contradictions. (Mot. to

---

7.
> Q ... Are you saying, then, at the end of the quarter when you sit down to do the books for the close of the quarter, first quarter of 2001, you don't know the amount of what they're going to invest? It has not closed. You believe it's pending?
> A I'm told that it's sold. It's not tentative. It's not hypothetical. I'm told there is additional equity sold.
> Q And who told you that?
> A It would have been Gary.
> Q Shiffman?
> A Yes.
>
> (Jorissen Investigative Test. Sept. 2, 2004 115:7–18.)

8. "[Representative from Pricewaterhouse-Coopers] would come and say, 'Are you using equity or cost,' and I would say 'We're using cost, because equity sales are taking place, or taken place, or committed to,' and Gary has told me it's done." (Jorissen Investigative Test. Feb. 10, 2005 80:3–6.)

9.
> Q Did you run [these transactions] by Mr. Shiffman? Did you make him aware that you were booking—that you were treating these transactions as taking place in Q1 of 2000 [*sic*]?
> A Well, I didn't treat them as if they were taking place, I treated the knowledge of the transactions as impacting the decision to use equity or cost accounting for Q1. So I don't know if we have a distinction without a difference there, or not. But—and then the audit committee would have been informed each quarter of what we were doing. Now ... we saw minutes where this came up at board meetings. So [Mr. Shiffman] probably knew, or at least had heard what the accounting was.

Dismiss 7.) This effectively argues that the Complaint fails to state a claim, so the standards of Rule 12(b)(6) apply. *See* Wright & Miller at § 1367 ("The mere fact that these procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters.")

A motion brought pursuant to Rule 12(b)(6) should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998). The court need not, however, "accept as true legal conclusions or unwarranted factual inferences." (*Id.*)

### B. Rule 13b2–1 Applies to the Allegations

■ Rule 13b2–1 applies to the allegations against Shiffman. Shiffman argues the rule does not apply because "the rule is only applicable to the recordation of 'transactions and disposition of the assets of the issuer'" as stated by the statute under which the rule is promulgated. (Mot. to Dismiss 12 (citing 15 U.S.C. § 78m(b)(2)(A) as § 13(b)(2)(A) of the Securities Exchange Act of 1934).) Also, he cites the legislative history of the rule to show the rule's purpose is to ensure "the issuer's records ... reflect transactions in conformity with accepted methods of recording economic events." (*Id.*) Shiffman argues that because under FAS 66 the sales were never consummated, they were not transactions of the assets of the issuer, and therefore are not subject to the rule. (Mot. to Dismiss 12.) This is incorrect. Shiffman's position is that the rule applies to the improper recordation of a transaction that should have been recorded, but not to the recording of a transaction that should never have been recorded. Both of these actions falsify the records, and the overarching purpose of the Rule, and of the Securities Act generally, is to force publicly traded companies to maintain accurate records. 15 U.S.C. § 75m(b)(2)(A) (cited in *S.E.C. v. Orr,* No. 04–74702, 2006 WL 542986, at *16 (E.D.Mich. Mar. 6, 2006) (Roberts, J.)); *see also S.E.C. v. Softpoint, Inc.,* 958 F.Supp. 846, 866 (S.D.N.Y.1997) (finding entry of "fictitious entries and payments" to violate Rule 13b2–1). Therefore, the rule does apply to these allegations.

### C. Causation Can be Shown from the Facts Alleged

■ The Complaint sufficiently alleges that Shiffman caused the false filing. Shiffman argues that the S.E.C. has failed to show that his actions caused the falsification of the books. He claims that since his statement to Jorissen at worst affects only one of the four FAS 66 requirements for accounting for sales of interest in real estate, he could not have caused the falsification because he had no effect on the other three requirements. (Mot. to Dismiss 11.) The S.E.C. responds that but for Shiffman's statement to Jorissen, the sale would not have been recorded during the first quarter of 2001. (Pltf. Resp. to Mot. to Dismiss 9–10.) According to the S.E.C., because the records from each quarter are distinct documents, causing the falsification of any one quarter's report is an offense not made less material simply because another quarter's report would have been falsified if Shiffman never made the statement. (Pltf. Resp. to Mot. to

Dismiss 9.) The S.E.C. is correct. A law that mandates accuracy in accounting records is not seeking for everything to come out in the wash at year's end, or in every couple of accounting statements; such a law demands that each and every report be accurate. It is critical for the public to know that each and every accounting report of a publicly traded company is correct, else any security in the company may be misvalued for some period of time. Here, the period of time attributable to Shiffman appears to be the two quarters between the time the Friedman and Horowitz sale was accounted for and when it would have been accounted for but for Shiffman's statement to Jorissen. Perhaps the fact that Shiffman only caused the falsification two quarters earlier than it otherwise would have been is relevant to determining the damage he has caused and correspondingly the penalty he should be required to pay, but it is irrelevant to the question of whether a claim has been stated against him. *See* 15 U.S.C. § 77t(d)(2).

■ Shiffman's contention that he could not have caused the falsification because his statement only regarded one of the four FAS 66 factors is also incorrect. This argument essentially asserts that because Shiffman's statement would not have resulted in the falsification if Jorissen had been using GAAP, Shiffman cannot be the cause of the falsification. It is true that Shiffman is not the sole cause of the false report, but it is also true that he need not be to violate Rule 13b2–1. The rule proscribes any person from "directly or indirectly ... caus[ing]" any record "to be falsified." (17 C.F.R. § 240.13b2–1.) The presence of another but-for cause in the falsification, that of an improper switch in the accounting method, does not mean that Shiffman did not cause the falsification; it only means he was not the sole cause. If Shiffman did not make a statement to Jorissen that the sale to Friedman and Horowitz was "final," then Sun's report to the S.E.C. would not have been falsified at the time it was. Thus, his statement was not just a cause, but a but-for cause, of the falsification. The fact that this statement went to only one of the four prongs of FAS 66 does not diminish its causal effect. The allegations read that Shiffman falsely stated to Jorissen when the books were being closed for the first quarter of 2001 that the agreements with Friedman and Horowitz had been finalized. (Compl.¶ 45.) If this is true, and the making of such a statement was unreasonable, then Shiffman may be found to have violated the rule. *S.E.C. v. Orr*, No. 04–74702, 2006 WL 542986, at *16 (E.D.Mich. Mar. 6, 2006) (Roberts, J.) ("Plaintiff must ... show that the defendant acted unreasonably" for liability under Rule 13b2–1). The allegations, when read in the light most favorable to the S.E.C., seem to indicate an unreasonable action; that of a CEO falsely telling a CFO who is closing the corporation's books that a sale has been finalized when it has not. This potentially unreasonable action appears to have at least indirectly caused[10] the false report to be filed with the S.E.C. Therefore, a claim under the Rule is stated.

### D. Allegations Against Shiffman are not Fatally Inconsistent

■ Finally, Shiffman's argument that the S.E.C. has pleaded with such factual

---

**10.** Shiffman also argues that the lack of a comprehensive definition for "indirect cause" precludes finding that he was an indirect cause of the falsification. (Def't Reply Br. for Mot. to Dismiss 4–5.) While the outer contours of what constitutes an indirect cause may be unknown, it is clear that one of two but-for causes of an action must be within the meaning of an indirect cause, if not within the meaning of a direct cause. Because this certainly falls within the definition of an indirect cause as meant by the Rule, there is no need for this Court to provide a comprehensive definition of the term at this time.

inconsistency that the claim should be dismissed is without merit. The S.E.C. has done no such thing. It has alleged that Shiffman made false statements to Jorissen that caused a falsified accounting report in the first quarter of 2001. Shiffman's assertion that the Complaint's contradicts itself in asserting both (1) that Shiffman's actions caused the sales to be recorded earlier than they would have been and (2) that the sales to Friedman and Horowitz should never have been recorded misses the point. There is a logical confluence of these statements: though the transactions never should have been recorded, they would have been recorded due to Jorissen's erroneous accounting principles, and Shiffman's statement to Jorissen made the false filing occur earlier than it otherwise would have. When one of the accounting reports filed with the S.E.C. has been falsified, a violation has occurred, regardless of whether the sole consequence of the action is that the false report is filed prior to when it otherwise would have been. Thus the statements are not so contradictory that a claim cannot be stated, and Shiffman's motion for judgment on the pleadings should be DENIED.

## III. ANALYSIS OF MOTION FOR SUMMARY JUDGMENT

I DENY Shiffman's motion for summary judgment. Shiffman must meet each of four elements to be liable in this case: (1) He must have made a false statement,[11] (2) that led to a false filing with the S.E.C., (3) his false statement must have caused the false filing, and (4) he must have acted unreasonably in making the statement. (17 C.F.R. § 240.13b2–1; *see also* Compl. ¶¶ 45 & 46.) For purposes of this motion only, Shiffman has conceded element two; that a false filing was made. (Def't Supp. Br. 2.) Because there are material disputes of fact as to each of the other three elements, summary judgment is inappropriate.

### A. Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Fed. R.Civ.P. 56(c).) A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001).

The burden on the moving party is satisfied where "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For a claim to survive summary judgment,

---

**11.** This Court has not seen any authority to prove that an individual must make a false statement to be liable under Rule 13b2–1. It seems from the text of the rule in combination with the undisputed scienter requirement, that a statement made unreasonably that causes the falsification of a record is a violation regardless of whether the statement itself was false. This Court need not decide this issue, however, because the allegation in the Complaint that the statement from Shiffman was false is a binding admission of the S.E.C. for purposes of this claim. *See Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir.1980).

the nonmovant must offer more than a "mere ... scintilla of evidence" as to the material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment should be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. The trial court has some discretion to determine whether the nonmovant's claim is plausible. *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087–88 (6th Cir.1996); *see also Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

### B. Dispute Exists as to Whether the Statement was False

■ Shiffman argues that the S.E.C. cannot support its claim as stated in the Complaint because there is no proof that the statement he made to Jorissen was false. (Mot. for Summ. J. 9–10, Def't Reply Br. to Mot. for Summ. J. 2–4.) For purposes of summary judgment, all this Court need determine is if a reasonable juror using the evidence before this Court could find that his statement was false. Because a reasonable juror could find that Shiffman told Jorissen the deal was "done," and find that statement to be false because there were critical terms such as the interest rate left to be determined, a question of fact for the jury exists and summary judgment is inappropriate.

Shiffman argues that because the S.E.C. has not offered any evidence that Shiffman told Jorissen the transaction with Friedman and Horowitz was finalized, the assertion in Jorissen's affidavit that Shiffman never told him the deal was finalized is uncontroverted, therefore there is no evidence of a false statement and summary judgment is mandated. (Mot. for Summ. J. 9–10.) Shiffman is correct that if the S.E.C. had produced no evidence to prove that point, it would fail to prove its pleading and would lose at this stage. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where Shiffman errs, however, is in his assertion that the S.E.C. has provided no such evidence. The investigative testimony contains several admissions by Jorissen that Shiffman told him the deal with Friedman and Horowitz was "done" or the interest was "sold." [12] (Jorissen Investigative Test. Sept. 2, 2004 115:7–18; Jorissen Investigative Test. Feb. 10, 2005 80:3–6.) The fact that the word "finalized" was not used in Jorissen's testimony is immaterial; a reasonable jury could find that the words he did use meant substantially the same thing as the allegation in the Complaint. There is no requirement that a word used in a complaint be a direct quotation of the word actually used by a witness. Unless there is a more rigorous pleading requirement for S.E.C. actions that follow lengthy investigations than for ordinary civil actions, then all the S.E.C. must do is provide a short plain statement of its claim so that the defendant may be apprised of the claim against it. (Fed.R.Civ.P. 8.) This Court has seen no such requirement. The S.E.C. has adequately apprised Shiffman

---

**12.** The S.E.C. asserted in oral argument that the investigative testimony should be given more weight than the Jorissen affidavit, since the testimony was taken years prior to this action and the affidavit was given after charges were brought. Other courts have found that this investigative testimony is equivalent to an affidavit. *See, e.g., S.E.C. v. American Commodity Exch.,* 546 F.2d 1361, 1369 (10th Cir.1976). This Court makes no finding as to whether the investigative testimony is more probative than Jorissen's affidavit, however, because it is enough for present purposes to find there is a dispute of material fact by treating this investigative testimony as similarly probative to the affidavit given by Jorissen.

of its claim against him through the Complaint, therefore the failure of the Complaint to quote the words used by Jorissen during his investigative testimony does not mandate summary judgment in Shiffman's favor.

### C. Dispute Exists as to Whether Shiffman Caused the False Filing

Although the S.E.C. has put forward no single piece of evidence that directly states that Shiffman caused the false filings, a reasonable jury could find from the evidence before this Court that Shiffman's actions did cause the filing. Jorissen stated in his investigative testimony that he switched to the cost method of accounting at least in part because Shiffman told him the Friedman and Horowitz sale "was done." (Jorissen Investigative Test. Feb. 10, 2005 at 80:3–6.) Jorissen also testified that it was his impression that a bright line rule existed such that if Sun's interest in SunChamp dropped below 20%, it was proper to use the cost method of accounting. (Jorissen Investigative Test. Sept. 2, 2004 at 63:25—66:18.) In Jorissen's view, the interest Shiffman agreed to sell to Friedman and Horowitz would have dropped Sun's ownership in SunChamp below 20%; if Sun retained that interest, it would have held greater than 20% of SunChamp and Jorissen would have continued to use the equity method of accounting. (*Id.* at 114:2—115:6.) A reasonable inference can therefore be drawn that if Shiffman had not told Jorissen the deal was done, Jorissen would have believed Sun still had greater than a 20% share of SunChamp and would not have made the filing the way he did. Thus, there is at least factual dispute as to whether Shiffman's statement caused the false filing, if not undisputed evidence that the statement was a necessary cause of the false filing. This is sufficient to deny Shiffman's claim that he should be granted summary judg-ment because there is no evidence that he directly or indirectly caused the falsification.

### D. Dispute Exists as to Whether Shiffman Acted Unreasonably

Because a jury could find either way on the issue of whether Shiffman acted unreasonably, summary judgment is inappropriate. A defendant can only violate Rule 13b2–1 if he has acted unreasonably. *S.E.C. v. Orr*, 2006 WL 542986, at *16. To find that Defendant Shiffman acted unreasonably in this case, a fact-finder would need to find that his telling Jorissen, the CFO of his company, that he had arranged for a sale of some equity in SunChamp before the closing of that sale was unreasonable. A juror could reasonably find that it was unreasonable to say to Jorissen the deal was "done" at the end of the quarter, when it had been made clear in corporate board meetings previously that the company would change the method in which it accounted for SunChamp if its interest in the venture dropped below 20%. Although Jorissen's affidavit clearly states that he did not understand Shiffman to be telling him that the deal had been closed, (Jorissen Aff. ¶ 7), the imprecision in Shiffman's language may have made it unreasonable for him to say what he did, regardless of Jorissen's understanding. Also, a jury could find that a statement that the deal was "done" is unreasonable because terms such as the interest rate had not yet been finalized, and that making a false statement is inherently unreasonable. Because this dispute as to the reasonableness of Shiffman's actions exists, summary judgment on this issue must be DENIED.

## IV. CONCLUSION

For the abovementioned reasons, I hereby DENY Defendant Shiffman's motion for judgment on the pleadings, and DENY

his motion for summary judgment. Each party is responsible for its own costs.

**IT IS SO ORDERED.**